IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,       )
                                  )   Case No. _____
            Petitioner,       )
                                    )
         v.                 )
                                    )
DELAWARE DEPARTMENT OF     )
INSURANCE,                     )
                                  )
           Respondent.     )

**PETITION TO ENFORCE SUMMONS**

The United States of America petitions this Court for an order enforcing a portion of an

IRS administrative summons served on the respondent, the Delaware Department of Insurance.

In support, the United States avers as follows:

1.      The Court has jurisdiction over this matter under 26 U.S.C. §§ 7402 and 7604(a),

as well as 28 U.S.C. §§ 1340 and 1345.

2.      The summonsed agency, the Delaware Department of Insurance ("the DDOI"),

resides or may be found within the boundaries of this judicial district.  Respondent, the DDOI, is

an agency of the State of Delaware.

3.      Bradley Keltner is a Revenue Agent of the Internal Revenue Service, employed in

the Large Business & International Division of the IRS in Bowling Green, Kentucky. (Keltner

Decl. ¶ 1).

4.      The Internal Revenue Service issued a summons to the DDOI for testimony and

certain records relating to filings by and/or communications with Artex Risk Solutions, Inc.

("Artex") and Tribeca Strategic Advisors, LLC ("Tribeca") or others working with Artex and/or

Tribecca. (Ex. 1).   With this petition, the United States seeks an order enforcing Request 1 of the

1

summons to the extent the DDOI has not already provided those records to the Internal Revenue Service, and also requiring the DDOI provide the summonsed testimony to the IRS.

5.     The Internal Revenue Service is conducting an investigation for the purpose of determining the role of Artex in transactions involving micro-captive insurance plans organized under 26 U.S.C. § 831(b), as well as other potentially abusive transactions. (Keltner Decl. ¶ 3). Tribeca is fully owned by Artex as of 2010, and the IRS is also investigating its role in transactions involving micro-captive insurance plans and other potentially abusive transactions. (Id.)  Among other things, the Internal Revenue is looking at whether Artex or Tribeca have promoted micro-captive insurance schemes and whether their actions may result in penalties pursuant to 26 U.S.C. § 6700, which Congress designed as "penalty provisions specifically directed towards promoters of abusive tax shelters *and other abusive tax avoidance schemes*." United States v. White, 769 F.2d 511, 515 (8th Cir. 1985) (quoting United States v. Savoie, 594 F. Supp. 678, 680 (W.D. La. 1984)) (emphasis in original) (further citation omitted); see also Keltner Decl. ¶ 4 (investigation to determine whether Artex and Tribeca are subject to penalties under 26 U.S.C. § 6700, which permits imposition of penalty against any person who makes or furnishes or causes another person to make or furnish certain statements "which the person knows or has reason to know [are] false or fraudulent as to any material matter").

6.     Micro-captive insurance schemes were designated a "Transaction of Interest" by the IRS.  Transactions of Interest are those the IRS believes have the potential for tax avoidance or evasion. IRS Notice 2016-66, 2016-47 I.R.B. 745 (Nov. 21, 2016).  The United States Tax Court has found these schemes can be used to avoid or evade taxes.  In the last three years, the United States Tax Court has struck down three separate micro-captive insurance transactions where the taxpayer sought to shield income from taxation through sham insurance companies.

Avrahami v. Commissioner, 149 T.C. 144, 179-180 (Tax Ct. 2017) (describing micro-captive transactions); Reserve Mech. Corp. v. Commissioner, Tax Ct. Memo. 2018-86, 2018 WL 3046596, at *16 (Tax Ct. 2018) (finding transactions did not constitute insurance where they involved circular flow of funds, were not the product of arm's-length considerations, used premiums that were not actuarially determined, covered nonexistent risks, and involved unlicensed insurance companies created for no legitimate non-tax purposes) (appeal docketed at No. 18-9011 (10th Cir.)); Syzygy v. Commissioner, T.C. Memo. 2019-34, 2019 WL 1559540, at *45 (Tax Ct. 2019) (invalidating Delaware micro-captive insurance company because arrangement did not distribute risk and did not meet commonly accepted definition of insurance). In at least one case, the United States Tax Court noted the participation of promoters in the micro-captive insurance scheme it invalidated. Avrahami v. Commissioner, 149 T.C. at 206 (taxpayers cannot rely on "promoters" of tax avoidance schemes to avoid penalties under 26 U.S.C. § 6662).

7.      At least one complaint has been filed against Artex, Tribeca, and others by 49 plaintiffs, seeking to bring a class action alleging damages sustained in connection with their participation in micro-captive insurance strategies that the named defendants "designed, developed, promoted, sold, implemented, and managed." Shivkov v. Artex Risk Solutions, No. 2:18-cv-4514-GMS, at Dkt. 1 ¶ 62 (D. Ariz.) (attached as Ex. 2), dismissed at Dkt. 84 (court ruling arbitration clause requires plaintiffs to pursue remedies outside federal court), appeal docketed at No. 19-16746 (9th Cir.).  Those plaintiffs seek compensation from Artex and Tribeca for damages arising from micro-captive insurance strategies that the plaintiffs entered into and utilized on their federal and state tax returns on the promotions and advice of Artex and Tribeca from 2005 onwards. (Ex. 2 at ¶ 62).

a.      The plaintiffs also allege that the IRS ultimately determined they "owed substantial back taxes, interest, and penalties as a result of their participation in" abusive micro-captive insurance strategies marketed and sold by Artex and Tribeca. (Ex. 2 at ¶ 63).

b.      The plaintiffs also allege that, to profit from their scheme, Artex and Tribeca "intentionally concealed the true nature of the strategies from tax authorities, as well as the plaintiffs themselves." (Ex. 2 at ¶ 66).

c.      The plaintiffs allege that Artex and Tribeca knew or should have known the transactions it promoted "were, in reality, nothing more than illegal and abusive tax shelters." (Ex. 2 at ¶ 71).

d.      The plaintiffs allege that Artex concocted these insurance schemes, sold them for large fees (in one instance, $40,000 upon creation of the scheme, with additional payments of $30,000 annually and 2.5% of all premiums). (Ex. 2 at ¶ 111).

e.      The plaintiffs allege that, all the while, Artex represented to its customers that the IRS had found these insurance schemes to be legal. (Ex. 2 at ¶ 112).

f.      The plaintiffs allege that Artex never disclosed that these transactions would not withstand IRS scrutiny, or that the plaintiffs would be subject to additional tax and penalties upon the IRS learning of these schemes. (Ex. 2 at ¶ 121).

g.      The plaintiffs allege that Artex and Tribeca facilitated at least some of these transactions by working with the DDOI. (Ex. 2 at ¶¶ 115, 122, 131, 132).

h.      Lastly, the plaintiffs allege that there are "hundreds, if not thousands," of similarly situated taxpayers that were sold tax avoidance schemes by Artex, Tribeca, and the other defendants. (Ex. 2 at ¶ 202).

8.      The DDOI has issued approximately 191 insurance certificates of authority to micro-captive insurance companies associated with Artex. (Keltner Decl. ¶ 6).  The information sought by the IRS summons is likely to be relevant to a determination of whether the Artex or Tribeca transactions were abusive tax shelters and whether Artex or Tribeca made false and fraudulent statements in organizing those abusive tax shelters. (Keltner Decl. ¶¶ 6, 16).  In response to the summons, the DDOI produced the files of 16 micro-captive insurance companies which waived any claim of confidentiality. (Keltner Decl. ¶ 13).  The DDOI also produced documents responsive to the summons that did not include so-called client-specific information. (Keltner Decl. ¶¶ 10-12).  The DDOI did not produce all records responsive to Request 1 of the summons. (Keltner Decl. ¶ 15).

9.      The Service previously issued and enforced two summonses against Artex. See United States v. Artex Risk Solutions, Inc., No. 1:14-cv-4081, 2014 WL 4493435 (N.D. Ill. Sept. 11, 2014); see also Keltner Decl. ¶ 5.  The documents produced pursuant to these summonses, as well as the documents produced by the DDOI thus far, strongly indicate that there are additional emails and other documents responsive to the summons that are being withheld. (Keltner Decl. ¶ 15).  They also indicate that the IRS has a legitimate purpose to investigate Artex. (Keltner Decl. ¶¶ 6, 15-16).

10.     For instance, in email correspondence that occurred on February 25, 2013, the DDOI agreed to issue Certificates of Authority to an Artex client with a certificate date of December 31, 2012. (Ex. 3; Keltner Decl. ¶ 5(a)).

11.     In another email, Artex invites the Director of the Bureau of Captive Insurance to dinner "as a thank you."  The director declines the invitation, explaining that "[i]t's not that we don't want to, but we've already accepted the invitation of another captive manager for dinner"

that evening. (Ex. 4; Keltner Decl. ¶ 5(b)).  The Artex employee and the director then schedule a breakfast at the Green Room in the Hotel Dupont with six DDOI employees the following morning. (Id.)

12.     Additionally, a comparison of the documents produced by the DDOI thus far to the documents produced by Artex in the summons enforcement action against it indicates that there are documents responsive to the summons that should be in the possession of the DDOI that were not produced by DDOI.  (Keltner Decl. ¶ 15).

13.     In his capacity as an IRS Revenue Agent, Keltner is authorized to issue IRS summonses. 26 U.S.C. § 7602; 26 C.F.R. § 301.7602-1; 26 C.F.R. § 301.7602-1T; IRS Delegation Order No. 25-1 (formerly Delegation Order No. 4). (Keltner Decl. ¶ 1).

14.     In furtherance of this investigation, Revenue Agent Keltner issued an IRS administrative summons to the DDOI on October 30, 2017, directing the DDOI to provide information set out in that summons by either appearing with the requested materials or delivering the requesting documents by mail to the IRS no later than 9:00 a.m. on November 29, 2017. (Keltner Decl. ¶ 7; Ex. 1 at 1).

15.     Revenue Agent Tyrran P. Coleman served an attested copy of the summons by hand delivery on October 30, 2017 at 11:07 a.m. (Keltner Decl. ¶ 8; Ex. 1 at 2).

16.     The DDOI failed to comply with Request 1 of the summons, which demanded "[a]ll electronic mail between [the DDOI] and Artex or Tribeca related to the Captive Insurance Program." (Keltner Decl. ¶ 9; Ex. 1 at 17).  The DDOI also failed to appear and provide the testimony demanded by the IRS in the summons. (Keltner Decl. ¶ 9; Ex. 1 at 1).

17.     On November 28, 2017, the DDOI provided a response that included approximately 169 pages of documents. (Keltner Decl. ¶ 10).

18.     On April 30, 2018, the DDOI provided a supplemental response.  It included approximately 125 pages of documents. (Keltner Decl. ¶ 11).  None of these additional documents included any emails. (Id.).

19.     After the IRS referred this case to the Department of Justice to bring this summons enforcement action, counsel for the United States conferred with representatives from the DDOI to obtain voluntary compliance with Request 1 of the summons.  As a result, the DDOI agreed to produce documents that it believes are not client-specific documents that are responsive to the summons on a rolling basis.  It has currently produced approximately 1591 pages of such documents, and the DDOI has represented to the government this represents a complete production of all non-client-specific documents in its possession, custody, or control that are responsive to Request 1. (Keltner Decl. ¶ 12).  To the extent the DDOI has provided these non-client-specific documents to the United States in the format requested, the United States does not seek to enforce the summons as to these documents at this time.

20.     The DDOI has represented that it also sent requests to some or all of the 191 micro-captive insurance companies identified above in paragraph 8, asking those companies to consent to the DDOI's release to the IRS of documents responsive to the IRS summons.  As of this filing, only 16 such micro-captive insurance companies agreed to this release, and the DDOI produced approximately 18,331 pages associated with those 16 micro-captive insurance companies to the IRS that are responsive to the IRS summons. (Keltner Decl. ¶ 13).  To the extent the DDOI has provided these documents to the United States in the format requested, the United States does not seek to enforce the summons as to these documents at this time.

21.     Aside from those documents described in paragraphs 17 through 20, above, the documents described in Request 1 of the summons are not already in the possession of the IRS.

(Keltner Decl. ¶ 14).  The DDOI also failed to provide the summonsed testimony. (Keltner Decl. ¶¶ 9, 14).  And as noted above, a comparison of the documents produced by the DDOI thus far to the documents produced by Artex in the summons enforcement action against it indicates that there are documents responsive to the summons that should be in the possession of the DDOI that were not produced by DDOI.  (Keltner Decl. ¶ 15).

22.    All administrative steps required by the Internal Revenue Code for the issuance of the IRS summons have been followed. (Keltner Decl. ¶ 18).

23.    The testimony, books, records, paper, or other data sought by Request 1 of the summons may be relevant to the IRS's investigation. (Keltner Decl. ¶ 16).

24.    No Justice Department referral is in effect within the meaning of 26 U.S.C. § 7602(d)(2) with respect to Artex or Tribeca for the years under investigation. (Keltner Decl. ¶ 17).

25.    In order to obtain enforcement of a summons, the United States must establish that the summons (1) is issued for a legitimate purpose; (2) seeks information relevant to that purpose; (3) seeks information that is not already within the IRS's possession; and (4) satisfies all administrative requirements in the Internal Revenue Code. United States v. Powell, 379 U.S. 48, 57-58 (1964).

26.    The attached declaration of Revenue Agent Keltner establishes the government's prima facie case under Powell.

WHEREFORE the United States respectfully prays that this Court

A.    Enter the attached order directing the respondent to show cause in writing, if any, why it should not be required to comply with and obey the IRS summons' request for testimony and the documents requested in Request 1 of that summons;

8

B.      Direct the respondent to obey the IRS summons' request for testimony and the

documents  requested in Request 1 of that summons, by ordering the attendance,

testimony, and production required and called for by the terms of the summons,

before Revenue Agent Keltner, his designee, or any other proper officer or

employee of the IRS, at such time and place as may be set by Revenue Agent

Keltner, his designee, or any other proper officer or employee of the IRS;

C.      Award the United States its costs incurred in maintaining this proceeding; and

D.      Grant such other and further relief as the Court deems proper or as justice may

require.

Date: June 19, 2020                                RICHARD E. ZUCKERMAN
                                                   Principal Deputy Assistant Attorney General

                                                   DAVID C. WEISS
                                                   United States Attorney

                                                   /s/ Ward W. Benson
                                                   WARD W. BENSON
                                                   KYLE L. BISHOP
                                                   Trial Attorneys, Tax Division
                                                   U.S. Department of Justice
                                                   P.O. Box 227, Ben Franklin Station
                                                   Washington, DC 20044
                                                   Tel: (202) 514-9642
                                                   Fax: (202) 514-6866
                                                   Email: ward.w.benson@usdoj.gov