## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| Petitioner, | ) |
| | ) C.A. No.: 20-CV-829-MN-CJB |
| v. | ) |
| | ) |
| DELAWARE DEPARTMENT OF | ) |
| INSURANCE, | ) |
| | ) |
| Respondent. | ) |

## MOTION TO STAY PETITION TO ENFORCE AN INTERNAL REVENUE
## SERVICE SUMMONS PENDING APPEAL

STATE OF DELAWARE
DELAWARE DEPARTMENT OF JUSTICE

**OF COUNSEL:**

James J. Black, III (*pro hac*)
Jeffrey B. Miceli (*pro hac*)
Mark W. Drasnin (*pro hac*)
Black & Gerngross, P.C.
1617 John F. Kennedy Blvd.
Suite 1575
Philadelphia, PA 19103
Tel. (215) 636-1650
jblack@blackgern.com
jmiceli@blackgern.com
mdrasnin@blackgern.com

Kathleen P. Makowski, Esq. (#3648)
Deputy Attorney General
1007 Orange Street, Suite 1010
Wilmington, DE 19801
(302) 674-7326
Kathleen.Makowski@Delaware.gov

and

Patricia A. Davis, Esq. (#3857)
Deputy State Solicitor
102 W. Water Street
Dover, DE 19904
(302) 257-3233
PatriciaA.Davis@Delaware.gov

Attorneys for Respondent,
*Delaware Department of Insurance*

Dated: October 28, 2021

## I.       Introduction

On September 29, 2021, this Court entered an Order adopting the Report and Recommendation of the Magistrate Judge ("R&R").  The Order overruled preliminary objections of the Delaware Department of Insurance (the "DDOI"), and granted the Petition of the Internal Revenue Service ("IRS") to Enforce a Summons ("Summons") directed to the DDOI.

The Order does not involve a routine issue common to most petitions to enforce IRS summonses.  Rather, addressing an issue of first impression, the Court determined significant legal issues involving the interplay between federal and state power under the reverse preemption mandates of the McCarran-Ferguson Act of 1945, 15 U.S.C. §§ 1011-1015 ("MFA").

The DDOI filed its Notice of Appeal on October 28, 2021.  The DDOI submits this Motion to Stay Petition to Enforce an Internal Revenue Service Summons Pending Appeal ("Motion to Stay") to stay enforcement of the Summons pending disposition of the appeal.   The Court should grant a stay because each of the four necessary factors[1] are satisfied – the same factors that are typically applied to address whether to grant a preliminary injunction.

The DDOI makes a strong showing that it will succeed on its appeal because the Court erred in its analysis in adopting the R&R.  Specifically, the Court construed the critical term "business of insurance" too narrowly in a case dealing with the first clause of Section 1012(b) of the MFA.  This faulty analysis so constricts the first clause  of the MFA that it abrogates the will of Congress regarding the treatment of first clause MFA cases and is contrary to the findings of the Supreme Court and Third Circuit.  Such a formulation also conflicts with the test used by other Circuit Courts of Appeals.

---

[1] (1) strong showing of the likelihood of success on the merits; (2) irreparable injury absent a stay; (3) substantial harm to other interested parties; and (4) whether a stay is in the public interest.   *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015).

The DDOI is irreparably harmed as a matter of law.  Enforcing the Summons effectively enjoins Section 6920 of the Insurance Code.  It forces the Insurance Commissioner of the State of Delaware to violate an express prohibition of state law.  Such harm to the DDOI is *per se* irreparable.  *Maryland v. King*, 867 U.S. 1301 (2012); *Hand v. Scott*, 888 F.3d 1206, 1214 (11th Cir. 2018).

Finally, the substantial harm to an interested party and the important public interest are intertwined and involve the primacy of Delaware insurance regulation, the significant issues of federalism associated with the MFA, and significant interference with the express duties of the Delaware Insurance Commissioner all of which greatly outweigh any harm to the IRS in waiting for these important issues on appeal to be addressed by the Court of Appeals.

Therefore, the preservation of the *status quo* during the pendency of the Petitioner's appeal is warranted and the DDOI respectfully requests that the Court stay the enforcement of the Summons until resolution of the pending appeal.

II.     **Statement of the Case**

    **A.  The IRS Summons, the Delaware Statute, and the McCarran-Ferguson Act**

This case arises from a petition by the IRS to compel the Insurance Commissioner of the State of Delaware ("Commissioner") to violate his statutory duty by producing information which is protected under the Delaware Insurance Code.  Specifically, 18 *Del. C.* § 6920 prohibits the Commissioner from producing documents except under certain circumstances not at issue here. The Summons seeks documents exchanged between the insurance regulator ("DDOI") and Artex Risk Solutions, Inc. ("Artex") related to the Delaware insurance companies it manages, and the owner/insureds, which includes licensing and financial examination documents.

Insurance companies, including captive insurance companies, are regulated by the states. This system of regulation stems from the MFA which expressly gives state law preeminence over conflicting federal law.  The MFA, and subsequent unambiguous rulings of the United States Supreme Court, have long recognized that insurance regulation is of paramount importance to the states, is under the exclusive authority of the states, and that "[n]o act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance."  15 U.S.C. § 1012(b).  This is referred to as "reverse-preemption," where state law negates and has supremacy over a conflicting federal law.  When the elements of the MFA are met,[2] the state law at issue has supremacy over and negates the contrary federal law.

In this matter, the Summons is reverse-preempted by the MFA and its enforcement is improper to the extent it compels the Commissioner to violate an express Delaware insurance statute which prohibits the Commissioner from providing the information sought by the IRS.

**B.  Procedural History**

On June 19, 2020, the Petitioner, United States of America, filed a Petition (the "Petition") to enforce the Summons (D.I. 1).  On February 8, 2021, the DDOI filed a motion to quash the Summons (D.I. 19) and a Response to the Petition.  (D.I. 15).  On July 16, 2021, Magistrate Judge Burke issued the R&R recommending granting the Petition and denying the DDOI's motion to quash the Summons.  (D.I. 28).  On July 30, 2021, the DDOI filed Objections to the R&R (D.I. 29) and on August 13, 2021, the IRS responded to the Objections (D.I. 33).  By Order dated

---

[2] The MFA precludes application of non-antitrust federal law, such as the IRS Tax Code at issue in this case, where: (1) the state law was enacted for the purpose of regulating the business of insurance; (2) the federal law does not "specifically relat[e] to the business of insurance;" and (3) the federal law would "invalidate, impair, or supersede" the State's law.  *Humana Inc. v. Forsyth,* 529 U.S. 299, 308 (1999).

September 29, 2021, this Court overruled the DDOI's objections, adopted the R&R, and granted the Petition ("9/29/21 Order") (D.I. 36).  On the same day, this Court also entered an "Errata Order" making certain changes to the R&R (D.I. 37) and a Memorandum Opinion setting forth the basis for the 9/29/21 Order (D.I. 35).

On October 28, 2021, the DDOI filed a Notice of Appeal (D.I. 39) and contemporaneously files this Motion to Stay Enforcement of the 9/29/21 Order ('Motion to Stay") pending the disposition of the appeal.

For the following reasons, the DDOI's Motion to Stay should be granted.

## III.    Legal Argument

The fundamental purpose of a Fed. R. Civ. P. 62 stay pending appeal is the preservation of the *status quo*.  *In re Zohar III, Corp.*, 2019 WL 6910285, at *8 (D. Del. Dec. 19, 2019).  Courts recognize that a stay is appropriate when the court has "ruled on an admittedly difficult legal question and when the equities of the case suggest that the *status quo* should be maintained." *Washington Metropolitan Area, Etc. v. Holiday Tours*, 559 F.2d 841, 843 (D.C. Cir. 1977); *Robertshaw v. Pudles*, 2014 WL 1976890, at *2 (E.D. Pa. May 15, 2014); *Cayuga Indian Nation of New York v. Vill. of Union Springs*, 317 F. Supp. 2d 152, 159 (N.D.N.Y. 2004); *Palazzetti Imp./Exp., Inc. v. v. Morson*, 2002 WL 562654, at *3 (S.D.N.Y. Apr. 16, 2002); *Morgan Guar. Tr. Co. of New York v. Republic of Palau*, 702 F. Supp. 60, 66 (S.D.N.Y. 1988); *F.T.C. v. Weyerhaeuser Co.*, 665 F.2d 1072, 1077 (D.C. Cir. 1981); *Rennie v. Klein*, 481 F. Supp. 552, 555 (D.N.J. 1979).[3]  In ruling on a motion pursuant to Rule 62(c), the district court's objective is to

---

[3] Delaware state courts also recognize that granting a stay is equitable where "the petitioner has presented a serious legal question that raises a fair ground for litigation and thus for more deliberative investigation."  *Kirpat, Inc. v. Delaware Alcoholic Beverage Control Comm'n*, 741 A.2d 356, 358 (Del. 1998), citing *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *see also Mass. Elec. Const. Co. v. Siemens Bldg. Techs.*,

preserve the *status quo* during the pendency of an appeal. *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.,* 925 F.2d 556, 565 (2d Cir.); 7 James W. Moore et al., *Moore's Federal Practice* ¶ 62.05 (2d ed. 1993).

To succeed on a Rule 62 motion, the movant bears the burden of proving that a stay is warranted based on the following factors: (1) whether the appellant has made a strong showing of the likelihood of success on the merits; (2) will the appellant suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest. *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015). The most critical factors are the first two: whether the appellant has demonstrated (1) a strong showing of the likelihood of success, and (2) that it will suffer irreparable harm—the latter referring to harm that cannot be prevented or fully rectified by a successful appeal. *Id.* (citing *Nken v. Holder,* 556 U.S. 418, 434 (2009) (internal citations omitted)).

Courts have explained that the factors are not to be rigidly applied and that no one single factor is determinative of the result; rather, the court should weigh all factors. *In re Springs,* 2013 WL 435026, at *1 (D. Del. 2013); *St. John v. Affinia Grp., Inc.,* 2009 WL 1586503, at *2 (D.N.J. 2009).

The issue before the Court is not only a matter of first impression, but is more unique, distinct, and unusual than the typical enforcement of IRS summons cases. Frequently, an IRS summons case involves an individual taxpayer or business appealing from an order granting an IRS summons.[4] This case is unique because the DDOI is not a taxpayer and, therefore, the stay

---

*Inc.*, 2010 WL 4527562, at *2 (Del. Super. Ct. 2010); *Villabona v. Bd. of Med. Prac. of Delaware*, 2004 WL 1588332, at *1 (Del. Super. Ct. 2004); *Eagle Force Holdings, LLC v. Campbell*, 2019 WL 2542240, at *3 (Del. Ch. June 20, 2019).

[4] *See e.g. United States v. Beeman*, 2011 WL 3021789, at *5 (W.D. Pa. July 22, 2011) (stay inappropriate where petitioner's filings and evidence establish petitioner attempted to evade IRS

standard should be viewed through a different lens.  A lens that involves an admittedly more difficult legal question than a taxpayer refusing to provide required documents to the IRS.

### A.    Likelihood of Success

#### 1.   Standard

With respect to the first factor – a strong showing of the likelihood of success - courts have recognized that it is illogical to require that the court which has just granted relief against a party "in effect conclude that its original decision in the matter was wrong before a stay can be issued." *Evans v. Buchanna,* 435 F. Supp. 832, 844 (D. Del. 1977) *quoted in Howard Johnson Inter., Inc. v. University Hospitality, LLC*, 2018 WL 2095595 at * 3 (D.N.J. May 7, 2018)*; see also, e.g. Cigar Association of America v. U.S. Food and Drug Administration*, 317 F. Supp. 3d 555,  561  n.2 (D.D.C. 2018); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) (it is not necessary that the court have serious doubts concerning the correctness of its decision from which the appeal is taken in order to grant a stay).  As such, the Third Circuit utilizes a "sliding-scale" approach to balance the stay factors, including the likelihood of success on the merits.  *Howard Johnson*, 2018 WL 20955595 at *3*; see also, Revel*, 802 F.3d at 568-69 (explaining "sliding-scale" approach).  Under the "sliding scale" approach discussed above, "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment

---

collection efforts); *United States v. Trenk*, 2009 WL 1298420, at *5 (D.N.J. May 8, 2009) (stay inappropriate where it would substantially injure government since IRS has been attempting to determine defendant's tax liability for over four years); *McCammon v. United States*, 588 F. Supp. 2d 43, 44–45 (D.D.C. 2008) (court denied petition to quash IRS summonses issued to third-party recordkeepers where petitioner had no substantial likelihood of success on merits of appeal); *United States v. Carlin*, 2006 WL 3208675, at *1 (E.D. Pa. Nov. 2, 2006) (court held production of tax documents is not protected by privilege against self-incrimination and, thus, defendant had no prospect of success of merits of appeal to support a stay); *United States v. Liascos*, 2005 WL 2155564, at *2 (E.D. Cal. Sept. 6, 2005) (IRS sought records in possession of defendant and court denied stay of summons where respondent failed to make any showing of likelihood of success).

of the other [stay] factors." *Revel,* 802 F.3d at 568 (quoting *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (second alteration in original)). As the *Revel* Court explained, "even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the stay opponent if a stay is granted, it is still required to show, at a minimum, 'serious questions going to the merits.'" *Id.* at 570 (brackets and internal quotations omitted).

As this Court explained in *In re Culp*, 550 B.R. 683 (D. Del. 2015), "a sufficient degree of success for a strong showing exists if there is a reasonable chance, or probability, of winning. Thus, while it is not enough that the chance of success on the merits be better than negligible, the likelihood of winning on appeal need not be more likely than not." *Culp*, at 696 (quoting *Revel,* 802 F.3d at 558-59) (internal quotation marks and internal citations omitted).

2.      **The DDOI Has a Strong Probability of Success on the Merits**

The DDOI has a strong probability of success on the merits. The threshold test used by the Court improperly focuses on the narrow "business of insurance" inquiry used in deciding anti-trust cases under the MFA instead of the broad standard used in deciding non-antitrust cases ("a law…enacted for the purpose of regulating the business of insurance") such as this one. If the stay is not granted, the Summons will compel the Commissioner to do what he is statutorily prohibited from doing: produce information which is protected under Section § 6920[5] of the Delaware Insurance Code.

---

[5] Section 6920 provides that "[a]ll portions of license applications reasonably designated confidential by or on behalf of an applicant captive insurance company . . . must, unless the prior written consent (which may be given on a case-by-case basis) of the captive insurance company to which it pertains has been obtained, be given confidential treatment, are not subject to subpoena, may not be made public by the Commissioner, **and may not be provided or disclosed to any other person at any time except**: (1) To the insurance department of any state or of any country or jurisdiction other than the United States of America; or (2) To a law-enforcement official or agency of this State, any other state or the United States of America so long as such official or

The issues presented to this Court, and which form the basis of the DDOI's appeal, implicate the MFA and its inherent purpose to restore the supremacy of the states in the realm of insurance regulation. *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 39 (1996)*; see also, In re Ins. Brokerage Antitrust Litig*., 618 F.3d 300, 353 (3d Cir. 2010) ("the primary purpose of the McCarran-Ferguson Act was 'to preserve state regulation of the activities of insurance companies, as it existed before the *South-Eastern* Underwriters case'") (citing cases).   This purpose is embodied in the first clause of section 2(b) (15 U.S.C. § 1012(b)).  *Id.*  The focus of the second clause of section 2(b)—the applicability of the antitrust laws to the insurance industry—"was only '[a] secondary concern.'"  *Id.* (quoting *Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 218 (1979)).

The fundamental issue in the DDOI's appeal is the proper construction of the phrase "enacted…for the purpose of regulating the business of insurance" contained in the First Clause of Section 2(b) of the MFA, as contrasted with decisions construing "the business of insurance" in the Second Clause of Section 2(b) of the MFA.[6]

The Supreme Court, in discussing claims under the First Clause stated: "The broad category of laws enacted for the purpose of regulating the business of insurance consists of laws that possess the end, intention, or aim of adjusting, managing, or controlling the business of

---

agency agrees in writing to hold it confidential and in a manner consistent with this section (emphasis added)."

[6] Hereinafter, "First Clause" shall refer to the first clause of 15 US.C. § 1012(b): "No Act of Congress shall be construed to invalidate, impair, or supersede any law **enacted by any State for the purpose of regulating the business of insurance**, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance (emphasis added)."

The term "Second Clause" shall refer to the second clause of § 1012(b): "Provided, That after June 30, 1948, …the Sherman Act, and…the Clayton Act, and…the Federal Trade Commission Act…shall be applicable to **the business of insurance** to the extent that such business is not regulated by State Law (emphasis added)."

insurance." *U.S. Dept. of Treasury v. Fabe*, 508 U.S. 491, 504-05 (1993) (citation and quotation marks omitted). As the Supreme Court explained: "This category necessarily encompasses more than just the 'business of insurance.'" *Id.* The Supreme Court emphasized that its decision was in conformity with the objectives of the MFA because "[t]he first clause of § 2(b) was intended to further Congress' primary objective of granting the States broad regulatory authority over the business of insurance. The second clause accomplishes Congress' secondary goal, which was to carve out only a narrow exemption for "the business of insurance" from the federal antitrust laws." *Id.*

The Third Circuit has likewise held that the scope of the First Clause is significantly broader than the second clause, despite both clauses using the same phrase:

> This first clause ... impos[es] what is, in effect, a clear-statement rule, a rule that state laws enacted 'for the purpose of regulating the business of insurance' do not yield to conflicting federal statutes unless a federal statute specifically requires otherwise. Both clauses incorporate the phrase "business of insurance," but as the Supreme Court has emphasized, the respective protections afforded to state law under the two clauses are of different scopes. The first clause commits laws 'enacted ... for the purpose of regulating the business of insurance' to the States, while the second clause exempts only 'the business of insurance' itself from the antitrust laws. **Because "[t]he broad category of laws enacted 'for the purpose of regulating the business of insurance' ... necessarily encompasses more than just the business of insurance," judicial determinations made when applying one clause may not be dispositive when applying the other**.

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 360 (citations and quotes omitted) (emphasis added).

The *Ins. Brokerage Antitrust Litig.* Court explicitly recognized that, as a consequence, laws which would not relate to the "business of insurance" under the Second Clause could still qualify as a law enacted for the purpose of regulating the business of insurance under the First Clause.

The Court specifically illustrated that distinction in a claim relating to advertising:

> In light of *Fabe*, we interpret this to mean that although any state law that regulates "the selling and advertising of insurance" will qualify as a "law enacted by [a] State for the purpose of regulating the business of insurance" under clause one of the McCarran–Ferguson Act, "the selling and advertising of insurance" is not the "business of insurance" under clause two unless it has some effect on "reliability" or underwriting issues.

*Id.* at 360–61.

A fundamental error underlies each of this Court's findings.  The Court erred when it determined that because the protection of information under Section 6920 is not "the business of insurance," it was not a "law…enacted for the purpose of regulating the business of insurance". (D.I. 35 at 16-17).  The Court upheld the R&R's conclusion that the "***focus of the conduct is on the relationship between the captive insurance company and regulator(s)***, not an insurance company and its insureds". (D.I. 35 at 16-17) (emphasis added).  This highlights the Court's improper elevation of the Second Clause's narrow "business of insurance" analysis over the First Clause's broad analysis of whether it is "a law…enacted for the purpose of regulating the business of insurance" by its use and analysis of the "threshold" requirement of whether the challenged conduct constitutes the 'business of insurance." (D.I. 35 at 9).

The DDOI contends that the use of the threshold is inconsistent with current Supreme Court and Third Circuit cases.  Indeed, the most recent formulations (prior to this case) of the Delaware District Court, the Third Circuit, and the United States Supreme Court all ***omit*** the threshold requirement.  *Humana Inc. v. Forsyth*, 529 U.S. 299 (1999); *S. Jersey Sanit. Co. Inc. v. Applied*

*Underwriters Captive Risk Assur. Co., Inc.*, 840 F.3d 138, 142 (3d Cir. 2016); *In re Patriot Nat., Inc.*, 2020 WL 5821754 *7 (D. Del. Sept. 30, 2020).[7]

The Seventh Circuit discussed the dangers of adding a "threshold" factor to the three-factor test:

> [T]he four part test misplaces the emphasis of the inquiry.  The four part test requires the court to examine the activity at issue to determine whether the ***activity being regulated*** is part of the "business of insurance."  However, the statutory language counsels us to examine the ***purpose for which the statute was enacted*** to determine whether the statute is one "enacted ... for the purpose of regulating the business of insurance."  While this distinction may seem somewhat semantic, the effect is far from inconsequential.
>
> \*   \*   \*
>
> The problem with this approach is that it casts too small a net to capture all of the statutes that were "enacted ... for the purpose of regulating the business of insurance."  There will be cases where the regulated activity does not constitute the "business of insurance" as that term is defined in *Pireno*, yet the statute that regulates the activity may have been enacted "for the purpose of regulating the business of insurance."  As the *Fabe* Court stated, the "broad category of laws enacted 'for the purpose of regulating the business of insurance' ... necessarily encompasses more than just the 'business of insurance

*Autry v. Nw. Premium Servs., Inc.*, 144 F.3d 1037, 1041–42 (7th Cir. 1998) (emphasis in original) (citations omitted).  As noted in footnote 10, *infra*, this position is not limited to the Seventh Circuit.  Even the Third Circuit in *Sabo v. Metro. Life Ins. Co.*, 137 F.3d 185, 189 n. 2 (3d Cir. 1998) recognized a circuit split on this issue.

The uncontradicted purpose of the confidentiality provisions of Section 6920 is to promote

---

[7] The Court also erred in its analysis of whether the conduct constituted 'the business of insurance" through its use of the three "anti-trust factors" of *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119 (1982), despite the fact that the Third Circuit has cautioned that it is 'difficult, if not impossible" to apply the three anti-trust factors to first clause, non-antitrust cases.  *Highmark, Inc. v. UPMC Health Plan, Inc*., 276 F.3d 160 at 167 n.1. (3d Cir. 2001).  Nonetheless, the Court placed substantial reliance of those factors.

transparency between the insurer and its regulator and provide a framework for the free flow of information in the licensing process.  (D.I. 17 at ¶ 19).  The Court dismissed this purpose by suggesting that Section 6920 "protects from disclosure broad swathes of information not merely applications and licensing information."  (D.I. 35 at 14) (quoting 6920: "…all examination reports, preliminary examination reports, working papers, recorded information, other documents, and any copies of any of the foregoing, produced or obtained by or submitted or disclosed to the Commissioner that are related to an examination pursuant to this chapter").

However, this argument fails for two reasons.  First, the only remaining document request in the Summons is to "Provide all electronic mail between the [DDOI] and Artex and/or Tribeca related to the Captive Insurance Program." (D.I. 1 at ¶¶ 8, 19, 21 and pp 8-9).  The remaining responsive documents all relate to the application and licensing of the captives or examinations. The regulation of the licensing of insurance companies is specifically identified as falling within the scope of the MFA.  *Sec. & Exch. Comm'n v. Nat'l Sec., Inc.*, 393 U.S. 453, 460 (1969) (citing *Robertson v. People of State of Cal.,* 328 U.S. 440 (1946)); *see also Gerling Glob. Reins. Corp. of Am. v. Low,* 240 F.3d 739, 746 n. 3 (9th Cir. 2001) ("Seeking information from insurers…to be used in the licensing process, is a form of regulating the business of insurance").[8]

Secondly, the remaining responsive documents also relate to documents received or produced relating to the examination of insurers.  Courts have examined the purpose of anti-disclosure statutes in the context of insurance examinations around the country and have specifically found that "[t]he statute is designed to assure companies such as [defendant] that they

---

[8] It was also undisputed that receiving information from other states is integral to the licensing and regulation of insurers in general (D.I. 17 at ¶¶ 18, 21, 23) and that the information-sharing agreements with other insurance commissioners ***require*** the confidentiality provisions in Section 6920.  *Id.; see also, e.g.,* 18 *Del. C.* § 316; Cal. Ins. Code § 1215.8(b)(2); Or. Rev. Stat. Ann. § 705.138; Tenn. Code Ann. § 56-2-801.

will not suffer harm from disclosure by entities over which they have no control, so that they will be encouraged to cooperate with DBR during an examination." *Mahon v. Chicago Tit. Ins. Co.*, 2017 WL 3331738 (D. Ct. Aug. 4. 2017) (quoting *Heritage Healthcare Servs. Inc. v. Beacon Mut. Ins. Co.*, 2007 WL 1234481 (R.I. Super. Apr. 17, 2007)).[9]  Insurance examinations are for the purpose of determining the solvency and safety of insurers, and for the protection of its policyholders. *See, e.g. Stewart v. Wilmington Trust SP Services, Inc.*, 112 A.3d 271, 314 (Del. Ch. 2015) ("DDOI has been given significant authority to achieve the goals of making innocent insurance policyholders whole", citing examination statute 18 *Del. C.* § 318).

As discussed above, the Third Circuit has recognized that laws which would not relate to the "business of insurance" under the Second Clause could still qualify as a law enacted for the purpose of regulating the business of insurance under the First Clause. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d  at 360-61.  As the likelihood of winning on appeal need not be "more likely than not," the DDOI more than satisfies this standard based on the *Ins. Brokerage* decision. This Court's determination that the MFA does not apply was too narrow.

This Court held that Section 6920 does not regulate the "business of insurance" because it did not fit into any of the types on the non-exhaustive list of *National Securities* or was not focused on the relationship between an insurance company and policyholder.  (D.I. 35 at 16).  However,

---

[9] In *City of Sterling Heights Gen. Employee's Retirement System v. Prudential Fin., Inc.,* 2015 WL 196368 at * 5 (D.N.J. Apr. 30, 2015), in denying the creation of a new federal privilege, the Court denied that the purpose of confidentiality statues of encouraging cooperation during an insurance examination **would be served** because insurance companies were already statutorily mandated to cooperate with examinations.  However, this argument does not negate the ***purpose*** for which the statute was promulgated.  Further, this reasoning has been expressly rejected in the context of bank examinations.  *See, e.g. Ball v. Bd. of Governors of Fed. Reserve Sys.,* 87 F.Supp.3d 33, 57 (D.D.C. 2015) ("If a financial institution cannot expect confidentiality, it may be less cooperative and forthright in its disclosures, even if an examination is mandatory").  As such, the R&R's reliance on the *City of Sterling Heights* for the proposition that Section 6920 does not relate to the business of insurance was improper.

this ignores *National Securities'* reminder that "other activities of insurance companies **relate so closely to their status as reliable insurers** that they too must be placed in the same class [as activities relating to the relationship between the insurer and insured]." 393 U.S. at 460 (emphasis added). The protection of information by Section 6920 is necessary to ensure that the DDOI is receiving accurate information. The DDOI uses the information that it receives from insurers, insureds, and other departments -- whether through the application/licensing process or through examination -- to evaluate an insurer's status as a reliable insurer. National Association of Insurance Commissioners [NAIC], *State Insurance Regulation*, at 4-5 (2011), https://www.naic.org/documents/topics_white_paper_hist_ins_reg.pdf; Robert W. Klein, Ph.D., Ph.D., *A Regulator's Introduction to the Insurance Industry*, at 133-40 (2d ed. 2005), https://www.naic.org/documents/prod_serv._marketreg_rii_zb.pdf**.** The DDOI maintains that the protection of information under Section 6920 is the "business of insurance" because the statute relates to the collection of licensing information.[10] It also relates closely to an insurer's status as a reliable insurer. Even if the collection and treatment of such information itself is not the "business of insurance", there can be no doubt that it is a "law … enacted for the purpose of regulating the business of insurance". It was enacted for the purpose of ensuring receipt of accurate information and complying with the standard allowing other insurance departments to share information with the DDOI. (D.I. 17. at ¶¶ 17-19). The DDOI has satisfied the "likelihood of success on appeal" factor.

---

[10] A state's regulation of "the licensing of [insurance] companies" has long been considered to be the "regulation of the business of insurance." *See Nat'l Sec., Inc.*, 393 U.S. at 460 (citing *Robertson v. People of State of Cal.,* 328 U.S. 440 (1946))*; see also Gerling Glob. Reinsurance Corp. of Am. v. Low*, 240 F.3d 739, 746 n. 3 (9th Cir. 2001) ("Seeking information from insurers …to be used in the licensing process, is a form of regulating the business of insurance").

**B.      Irreparable Harm**

The DDOI is irreparably harmed as a matter of law.  Irreparable harm "refer[s] to 'harm that cannot be prevented or fully rectified' by a successful appeal." *Revel*, at 568 (quoting *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 386 (7th Cir. 1984)).  The movant must "demonstrate that irreparable injury is likely not merely possible in the absence of a stay." *Revel*, at 569 (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)) (quotations and brackets removed).

"[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers), quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)*; see also, Thompson v. DeWine*, 976 F.3d 610, 619 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2512 (2021); *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 571 U.S. 1061 (2013) (Scalia, J., concurring).

The irreparable harm, as the Sixth Circuit recognized in *Priorities USA v. Nessel*, No. 20-1931, 2021 WL 3044270, at *3 (6th Cir. July 20, 2021), is "an injury in the infringement of the state's sovereign interest in passing and enforcing its laws."  Even when the potential for adverse consequences is minimal, failing to effectuate state statutes causes irreparable harm. *Id.* (reversing injunction to prevent enforcement of state's voter-transportation law.)

Cases that have addressed this issue find that the State will suffer irreparable harm where a state entity is commissioned to do something – through a statute enacted by representatives of its people – and the effect of the requested relief would stop or prevent the state entity from performing its statutory duty. *See, e.g. Valentine v. Collier*, 956 F.3d 797 (5th Cir. 2020) (state prison officials entitled to stay pending appeal of preliminary injunction that required officials to

immediately implement more drastic COVID measures, beyond CDC guidelines); *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603 (8th Cir. 2020) (injunction against enforcement of Texas laws regulating voter registration activity constituted irreparable harm to state); *Hand v. Scott*, 888 F.3d 1206, 1214 (11th Cir. 2018) (state clemency board entitled to stay because it would be irreparably harmed if it could not apply its own laws to grant clemency to eligible applicants); *Veasey v. Abbott*, 870 F.3d 387, 392 (5th Cir. 2017) (motion for stay pending appeal granted where State denied ability to enforce voter registration law); *Voting for Am., Inc. v. Andrade*, 488 F. App'x 890, 904 (5th Cir. 2012) (injunction against enforcement of Texas laws regulating voter registration activity constituted irreparable harm to the state).

Notably, courts do not weigh the importance of any interests in determining whether a state was irreparably harmed.  The test is whether:  (1) there is a statute and (2) the state is prevented from performing under that statute.  ***Any time*** a court prevents the State from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.  *Maryland v. King*, *supra*.

This case is no different.  That injury is present here.  If the Summons is enforced, that enforcement will *de facto* prohibit the Commissioner from performing his statutory duties.  This will directly cause the Commissioner to violate his express duties under Section 6920 of the Delaware Captive Act – a law that was enacted in the Delaware Assembly by state legislators who were elected by the residents of Delaware, and which governs and proscribes the Commissioner's duties.  Without question, if a stay is not granted, the enforcement of the Summons will infringe upon Delaware's sovereign interest in the Delaware Insurance Code, and the Delaware Captive Act which forms a part of its integrated scheme.

Accordingly, this action itself, compelling the Commissioner to violate Section 6920 of the

Delaware Insurance Code, *per se* constitutes serious and irreparable harm to Delaware and its Commissioner.

## C.     Substantial Injury to Other Party / Public Interest

The final two factors – substantial injury to an interested party and the public interest – are intertwined with the issues addressed above concerning the Commissioner's duty to follow Delaware law and the well-recognized public policy associated with the primacy of state insurance regulation and the issues of federalism arising from application of the MFA.

As noted in Section II (B) above, there is irreparable harm to Delaware from enforcing the Summons.  By contrast, the IRS will suffer no significant harm from the delay in enforcement caused by resolution of this matter on appeal.[11]

As noted above and in prior filings, in enacting the MFA Congress recognized the supremacy of state regulation of insurance over contrary federal law.  In fact, the MFA declared "that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several states." 15 U.S.C. § 1011.

Delaware, like all states, closely regulates the business of insurance including the licensing, conduct and oversight of its domiciled insurers.  *See generally* Delaware Code, Title 18.  As part of that regulation, Delaware comprehensively regulates captive insurance and captive insurance companies.  18 *Del. C.* § 6901, *et seq.*  Chapter 69 of the Delaware Insurance Code is an important part of the comprehensive statutory scheme and governs the formation, licensing, and regulation of captive insurers, the integration and interplay of Chapter 69 within the broader Delaware

---

[11] This is true for a number of reasons including, but not limited to the fact that it is undisputed that the IRS has many of the documents it seeks from other sources, and that this matter has been pending since 2013.

Insurance Code, and the DDOI's ongoing regulatory oversight of captives.  (D.I. 17 at ¶¶ 8-9).

In fact, Delaware courts acknowledge that insurance regulation implicates important public policy.  *State Farm Mutual Auto. Ins. Co. v. Kelly*, 126 A.3d 631, 641 (Del. 2015) (to consider relevant public policy, any judicial ruling should be carefully justified by reference to the public policy as reflected in the overall statutory scheme, as that is the legitimate source of public policy in the heavily regulated insurance field, in this case automobile personal injury protection benefits); *Stewart v. Wilmington Trust SP Services, et. al.*, 112 A.3d 271, 313 (Del. Chan. 2015) ("In general, the reach of influence and consequence of insurance companies have long been considered beyond and different from that of ordinary business….Delaware has a particularly significant interest in regulating insurance companies domiciled here, whose assets purportedly exceed $500 billion in the aggregate, making the Department of Insurance the largest consumer protection agency in the state") (citations and internal quotation marks omitted); *Allstate Auto Leasing Co. v. Caldwell*, 394 A.2d 748, 751 (Del. Super. 1978) ("one of the prime objectives as well as justification for the stringent regulation of the insurance industry is the protection of the public"); 18 *Del. C.* § 6901(a) (the Delaware State Assembly expressly found that the use and growth of the Delaware captive insurance industry is in Delaware's best interest).

In addition to the public policy interest in the DDOI's regulation of insurance in Delaware, Section 6920 is a duly-enacted Delaware law.   Courts consistently hold, in construing the factors for grant of a preliminary injunction or stay, that "It's in the public interest that we give effect to the will of the people by 'enforcing the laws they and their representatives enact."   *Thompson*, 976 F.3d at 619; *Sinner v. Jaeger*, 467 F. Supp. 3d 774, 786 (D. N.D. 2020) ("Enforcement of duly enacted laws advances the public interest…"); *Tri-Cty. Wholesale Distributors, Inc. v. The Wine Grp., Inc.*, No, 2010 WL 3522973, at *8 (S.D. Ohio Sept. 2, 2010), *aff'd sub nom. Tri-Cty.*

*Wholesale Distributors, Inc. v. Wine Grp., Inc.*, 565 F. App'x 477 (6th Cir. 2012) (giving effect to the Ohio General Assembly's valid and duly enacted laws generally furthers the public interest); *Kelly Servs., Inc. v. Noretto*, 495 F. Supp. 2d 645, 660–61 (E.D. Mich. 2007) ("It is axiomatic that the public has an interest in the enforcement of the legislatively enacted laws").

The important public interest involved in Delaware insurance regulation, the significant issues of federalism associated with the MFA in a matter of first impression, and the direct interference with statutorily enacted duties of the Delaware Insurance Commissioner greatly outweigh any harm to the IRS in waiting for the important issues on appeal to be addressed by the Third Circuit.  There simply is no need for immediate production in this instance.

**D.     The Sliding Scale Weighs Heavily in Favor of the Stay**

As discussed above, if the stay is not granted, enforcement of the Summons will cause the DDOI to suffer irreparable harm which outweighs any potential harm to the IRS.  The DDOI has also shown that the stay is in the public interest.  If granted, it will recognize Delaware's strong public interest in regulating insurance companies through its duly enacted laws.

As such, when utilizing the "sliding scale" standard, the DDOI need only show a serious question going to the merits to satisfy the likelihood of success factor.  *Revel*, 802 F.3d at 568 (a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the stay opponent if a stay is granted, it is still required to show, at a minimum, 'serious questions going to the merits.'") (brackets and internal quotations omitted).

The arguments raised Section III(A)(2) meet the far end of the sliding scale (the "strong showing of the likelihood of success on the merits" standard) and thus satisfy the less-stringent

standard of "serious questions going to the merits."[12]

## CONCLUSION

For the foregoing reasons, Petitioner, the Delaware Department of Insurance respectfully requests that this Honorable Court stay the enforcement of the Summon pending an appeal to the Third Circuit.

**OF COUNSEL:**

James J. Black, III (*pro hac*)
Jeffrey B. Miceli (*pro hac* )
Mark W. Drasnin (*pro hac* )
Black & Gerngross, P.C.
1617 John F. Kennedy Blvd.
Suite 1575
Philadelphia, PA 19103
Tel. (215) 636-1650
jblack@blackgern.com
jmiceli@blackgern.com
mdrasnin@blackgern.com

October 28, 2021

**STATE OF DELAWARE**
**DELAWARE DEPARTMENT OF JUSTICE**

*/s/ Kathleen P. Makowski*
Kathleen P. Makowski, Esq. (#3648)
Deputy Attorney General
1007 Orange Street, Suite 1010
Wilmington, DE 19801
(302) 674-7326
Kathleen.Makowski@Delaware.gov

and

Patricia A. Davis, Esq. (#3857)
Deputy State Solicitor
102 W. Water Street
Dover, DE 19904
(302) 257-3233
PatriciaA.Davis@Delaware.gov

Attorneys for the Respondent,
*Delaware Department of Insurance*

---

[12] A circuit split on an issue satisfies the "serious questions" test. *See, Salix v. U.S. Forest Service*, 995 F. Supp.2d 1148, 1154 (D. Mt. 2014) (citing *Cal. v. Am. Stores Co*., 492 U.S. 1301, 1305–06 (1989) (O'Connor, J., in chambers), *vacated on other grounds*, 495 U.S. 271, 110 S.Ct. 1853, 109 L.Ed.2d 240 (1990)); *Pokorny v. Quixtar Inc*., 2008 WL 1787111, at *1 (N.D. Cal. Apr. 17, 2008). Even the Third Circuit case which applied a "business of insurance" threshold in a First Clause case recognized that there was already a circuit split on that issue. *Sabo v. Metro. Life Ins. Co.*, 137 F.3d 185, 189 n. 2 (3d Cir. 1998). Note that there also appears to be an "intra-circuit" split as well, as the most recent formulations (prior to this case) of the Delaware District Court, the Third Circuit, and the United States Supreme Court all *omit* the threshold requirement. *Humana*, 529 U.S. at 307 (1999); *S. Jersey Sanit. Co.*, 840 F.3d at 142; P*atriot Nat.,* 2020 WL 5821754 at *7.