IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 20-829-MN-CJB |
| ) | |
| DELAWARE DEPARTMENT OF ) | |
| INSURANCE, ) | |
| ) | |
| Respondent. ) | |

**REPORT AND RECOMMENDATION**

Presently pending in this summons enforcement action brought by Petitioner United States of America (the "Government") against Respondent Delaware Department of Insurance ("DDOI"), is DDOI's motion to stay pending appeal a petition (the "Petition") to enforce an Internal Revenue Service ("IRS") summons (the "Motion"). The Motion was filed pursuant to Federal Rule of Civil Procedure 62(c). (D.I. 40) With the Motion, DDOI seeks to stay enforcement of the IRS summons (the "Summons") directed to DDOI, pending disposition of its appeal of the decision in this case to United States Court of Appeals for the Third Circuit. (*Id.* at 1) For the reasons set forth below, the Court recommends that the Motion be DENIED.[1]

**I.    BACKGROUND**

    **A.    Factual Background**

---

[1] Courts do not seem to agree as to whether a motion to stay pending appeal should be treated as a dispositive or non-dispositive motion. *Compare In re Gushlak*, No. 11-MC-218 (NGG), 2012 WL 1514824, at *2 (E.D.N.Y. Apr. 30, 2012) *and Conklin v. Anthou*, Civil No. 1:CV-10-2501, 2011 WL 2650715 (M.D. Pa. July 6, 2011) *with Balschmiter v. TD Auto Fin. LLC*, Case No. 13-CV-1186-JPS, 2014 WL 12656095, at *2 (E.D. Wisc. Nov. 21, 2014) *and Bell v. Alltel Commc'ns, Inc.*, Civil Action No. 08-648, 2008 WL 4646146 (W.D. Pa. Oct. 17, 2008). In an abundance of caution, the Court will title this opinion as a "Report and Recommendation."

The Court writes primarily for the parties here, as both sides are well familiar with the facts. A good summary of the relevant factual background regarding this matter can be found in the Court's July 16, 2021 Report and Recommendation ("Report"). (*See* D.I. 28 at 1-6)

### B. Procedural Background

The Government filed the Petition on June 19, 2020, along with a supporting declaration authored by an IRS Revenue Agent. (D.I. 1; D.I. 3) With the Petition, the Government sought from DDOI certain outstanding documents and testimony pursuant to the Summons at issue. (*Id.*) On October 15, 2020, United States District Judge Maryellen Noreika referred this case to the Court to hear and resolve all pre-trial matters up to and including expert discovery matters. (D.I. 6)

On February 8, 2021, DDOI filed a motion to quash the petition to enforce the Summons, or in the alternative, for a protective order (the "motion to quash"). (D.I. 16) After holding a hearing on the Petition and the motion to quash, on July 16, 2021, the Court issued the Report, in which it recommended that the Petition be granted and the motion to quash be denied. (D.I. 28)[2] On September 29, 2021, Judge Noreika issued an Order and Memorandum Opinion (the "MO") overruling DDOI's objections to the Report and adopting the Report—thus granting the Government's Petition and denying DDOI's motion to quash. (D.I. 35, D.I. 36)

On October 28, 2021, DDOI filed a notice of appeal of the District Court's Order and MO to the Third Circuit. (D.I. 39) DDOI also filed the instant Motion on the same day, by

---

[2]     On September 21, 2021, the Court issued an Errata Order that made a few non-substantive changes to the text of the Report. (D.I. 34)

which it seeks to stay enforcement of the Summons pending disposition of the appeal. (D.I. 40) On November 19, 2021, briefing was completed on the Motion. (D.I. 44)[3]

## II. STANDARD OF REVIEW

A stay pending appeal is an "extraordinary remedy[.]" *El v. Marino*, 722 F. App'x 262, 267 (3d Cir. 2018); *see also Conestoga Wood Specialities Corp. v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, No. 13-1144, 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013). "The granting of a motion for stay pending appeal is discretionary with the court." *In re Ursa Operating Co. LLC*, No. 20-12067 (BLS), 2021 WL 1751852, at *4 (D. Del. May 4, 2021) (internal quotation marks and citation omitted). The party requesting a stay bears the burden to show that the circumstances justify an exercise of that discretion. *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).

When assessing a motion to stay pending appeal, the Court considers: (1) whether the movant has made a "strong showing" that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether a stay will substantially injure other interested parties; and (4) where the public interest lies. *El*, 722 F. App'x at 267; *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). The first two factors are the most critical. *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (noting that the first factor, relating to the likelihood of success on the merits, is "arguably the more important piece of the stay analysis"). As such, "if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is

---

[3] The parties' briefs do not appear to have complied with D. Del. LR 7.1.3, as they did not, *inter alia*, include a table of authorities, nor a table of contents. This made the Court's work on the instant opinion more difficult. The Court reminds counsel of the importance of following the District Court's Local Rules when submitting briefs.

unnecessary, and the stay should be denied without further analysis." *In re Revel AC, Inc.*, 802 F.3d at 571 (internal quotation marks, brackets and citations omitted). If, however, a movant does make a sufficient showing that it can win on the merits and that it will suffer irreparable harm absent a stay, then the Court must "balance the relative harms considering all four factors using a 'sliding scale' approach." *Id.* (internal quotation marks and citation omitted); *see also S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 772 (3d Cir. 2019).

### III. DISCUSSION

In this opinion, the Court will address whether DDOI has made a sufficient showing as to likelihood of success on the merits. For the reasons set forth below, the Court concludes that it has not. In light of this, the Court need not address the remaining motion for stay pending appeal factors and will recommend that the Motion be denied. *See, e.g.*, *S.S. Body Armor I., Inc.*, 927 F.3d at 775.

As noted above, a party seeking a stay pending appeal must make a "strong showing" that it can prevail on the merits. In other words, it must demonstrate that is has "a reasonable chance, or probability, of winning" that is "better than negligible" but "need not be more likely than not[.]" *In re Revel AC, Inc.*, 802 F.3d at 568-69 (internal quotation marks and citation omitted).[4]

---

[4] The Government notes that some courts have held that the first "likelihood of success" factor should be more stringently applied in cases determining whether to stay enforcement of an IRS summons. (D.I. 43 at 2 n.2 (citing cases)); *see, e.g.*, *U.S. v. Diversified Grp., Inc.*, No. M 18-304 PKL, 2002 WL 31812701, at *1 (S.D.N.Y. Dec. 13, 2002) (citing caselaw from the United States Court of Appeals for the Second Circuit, which stands for the proposition that in such a case, a stay should not be granted unless there is a "substantial possibility of success") (internal quotation marks and citation omitted). However, the Court is not aware of any Third Circuit caselaw suggesting that this factor should be assessed differently in an IRS summons case. Thus, it declines to do so here.

With its Motion, DDOI asserts that it has made the requisite showing by demonstrating that the District Court erred on two fronts, which the Court will take up in turn.

### A. Use of a "Threshold" Test

DDOI's first argument as to the "likelihood of success" factor—indeed, what it calls the "fundamental issue" on appeal—is its contention that the District Court (in upholding the Court's decision in the Report) wrongly concluded that: (1) although a three-factor test applies to an assessment of whether the state law at issue here (Section 6920 of the Delaware Insurance Code, hereafter "Section 6920") reverse preempts 26 U.S.C. § 7602 (the federal law that permits the IRS to obtain information pursuant to the Summons) in light of the McCarran-Ferguson Act ("MFA"); (2) prior to engaging in that three-factor analysis, a district court must first assess whether an additional, threshold element (the "threshold element") has been met: "whether the activity complained of constitutes the 'business of insurance.'" (D.I. 40 at 8; *see also id.* at 10 (DDOI asserting that the District Court's "fundamental error" was its "use and analysis of the 'threshold' requirement of whether the challenged conduct constitutes the 'business of insurance'")) DDOI claims that the District Court's "use of the threshold [test] is inconsistent with current Supreme Court [of the United States] and Third Circuit cases." (*Id.* at 10) More specifically, DDOI points to the fact that in *Humana Inc. v. Forsyth*, 525 U.S. 299 (1999) and *S. Jersey Sanit. Co. v. Applied Underwriters Captive Risk Assurance Co.*, 840 F.3d 138 (3d Cir. 2016), the Supreme Court and the Third Circuit did not apply the threshold test. (D.I. 40 at 10-11; *see also* D.I. 43 at 3)

DDOI's argument here is not new, and it was addressed by the Court (in the Report) and the District Court (in the MO). With regard to *Humana*, both the Report and the MO discuss that decision. Both opinions explain that: (1) in *Humana*, the Supreme Court did not explicitly

5

mention or apply the threshold test; (2) but at the same time, the Supreme Court there did not clearly and unambiguously consider whether use of the threshold test was proper; (3) therefore, the Court is required to apply Third Circuit precedent on the issue; (4) the Third Circuit has twice—once before *Humana* in *Sabo v. Metro. Life Ins. Co.*, 137 F.3d 185 (3d Cir. 1998) and again after *Humana* in *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160 (3d Cir. 2001)—applied the threshold test in a non-antitrust matter; and (5) thus, the District Court must follow that binding Third Circuit precedent (in place since 1998) and apply the threshold test here. (D.I. 35 at 11; *see also* D.I. 28 at 24)[5] As for the Third Circuit's decision in *S. Jersey Sanit. Co.*, the District Court addressed that case in its MO. In doing so, the District Court explained that: (1) in that case, the Third Circuit did not even discuss reverse preemption under the MFA in any detail, because the decision turned on a separate arbitration-related legal question; (2) even if the *S. Jersey Sanit. Co.* Court's failure to reference the threshold test in its opinion could be said to bring the opinion into conflict with prior Third Circuit precedent, *S. Jersey Sanit. Co.* could not serve to overrule that prior precedent, pursuant to the Third Circuit's law and operating procedures. (D.I. 35 at 12 (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 177 (3d Cir. 2017); *Pardini v. Allegheny Intermediate Unit*, 524 F.3d 419, 426 (3d Cir. 2008)))

---

[5]    DDOI argues that the Court need not concern itself with Third Circuit caselaw because in *Humana*, the Supreme Court made it clear that "the proper test to use for determining whether the MFA applied [was] a three-part test." (D.I. 44 at 3) As the Court noted in the Report, however, in *Highmark*, the Third Circuit: (1) noted that it was aware of the *Humana* decision and cited to that decision; but (2) still applied the threshold test. (D.I. 28 at 24 n.13) So the Court does not see how it could conclude, in light of this, anything other than controlling Third Circuit caselaw—caselaw that is not in conflict with the Supreme Court's decisions—indicates that the threshold test must be applied in an MFA reverse-preemption analysis like this one.

6

In light of this, the Court cannot conclude that DDOI has "a reasonable chance, or probability, of winning" its appeal on this issue that is "better than negligible." In so concluding, the Court acknowledges that this is a complex area of the law. And it recognizes that (as DDOI has pointed out) some other courts outside of the Third Circuit have concluded that in cases like this one, they should not utilize a threshold "business of insurance" test. (D.I. 40 at 11 (citing *Autry v. Nw. Premium Servs., Inc.*, 144 F.3d 1037 (7th Cir. 1998)) Here, however, the Court's decision is simply premised on the fact the Report's and the MO's analyses were well grounded in binding Third Circuit precedent—and that, in light of that precedent, DDOI does not have a reasonable chance of prevailing in its appeal to the Third Circuit. (D.I. 43 at 4); *see also David v. Weinstein Co. Holdings, LLC*, C.A. No. 21-171 (MN), 2021 WL 979603, at *3-4 (D. Del. Mar. 16, 2021), *appeal dismissed sub nom. In re Weinstein Co. Holdings LLC*, No. 21-1598, 2021 WL 4429044 (3d Cir. Apr. 27, 2021) (concluding that a party failed to meet its burden as to the first stay pending appeal factor, where Third Circuit precedent supported the decision at issue, and noting that "[p]recedent from outside this Circuit will not raise Appellants' likelihood of success"); *In re THG Holdings LLC*, Case No. 19-11689 (JTD), 2019 WL 6615341, at *4 (D. Del. Dec. 5, 2019) (concluding the same, in part because although the moving party was arguing that a 2019 Third Circuit decision supported its position, a previously-issued 1992 Third Circuit decision conflicted with the party's position and was still good law, in that it had never been overruled by the Third Circuit *en banc*).

### B.  Whether the Challenged Conduct at Issue Constitutes the "Business of Insurance"

DDOI's other "likelihood of success" argument relates to its position that—even if the District Court was correct that it must first make a threshold determination as to whether the conduct at issue constitutes the "business of insurance"—the District Court nevertheless erred by

"constru[ing] the critical term 'business of insurance' too narrowly in a case dealing with the first clause of Section 1012(b) of the MFA [i.e., a non-antitrust case]." (D.I. 40 at 1)  In this regard, DDOI charges that the District Court "improperly focuses on the narrow 'business of insurance' inquiry used in deciding antitrust cases under the MFA[,] instead of the broad standard used in deciding non-antitrust cases . . . such as this one." (*Id.* at 7; *see also id.* at 8-10; D.I. 44 at 2-3)  DDOI's arguments here are at times hard to follow, but the Court will try to parse them as best it can.

As an initial matter, DDOI appears to fault the District Court for relying on three factors that the Supreme Court articulated in *Grp. Life & Health Ins. Co v. Royal Drug Co.*, 440 U.S. 205 (1979), in order to help assess whether the challenged conduct at issue amounts to the "business of insurance." (D.I. 40 at 11 n.7; *see also* D.I. 35 at 15)  But as the District Court noted in the MO (and as the Court noted in the Report), in *Sabo*, the Third Circuit itself:  (1) clearly stated that it "disagree[d]" with the idea that these three factors should not be used in non-antitrust cases; (2) explained that the factors could "provide guidance" in non-antitrust matters; and (3) also noted that the factors were only a "starting point" in the analysis.  *Sabo*, 137 F.3d at 191 & n.3; *see also* (D.I. 28 at 26-27 & n.16; D.I. 35 at 14-16).  It cannot be error to follow the guidance from binding Third Circuit precedent, and that is what the District Court did here.

DDOI also charges that the District Court ignored the fact that "the Third Circuit has recognized that laws which would not relate to the 'business of insurance' under the Second Clause [of Section 1012(b) of the MFA] could still qualify as a law enacted for the purpose of regulating the business of insurance under the First Clause [of Section 1012(b) of the MFA]." (D.I. 40 at 13 (citing *In re Brokerage Antitrust Litig.*, 618 F3d. 300, 360-361 (3d Cir. 2010)); *see*

8

*also* D.I. 44 at 2) But the District Court recognized that very fact when conducting its analysis. (D.I. 35 at 15 ("To be sure, there are distinct clauses in the relevant section of the MFA [Section 1012(b)] — the first clause addressing laws enacted for the purpose of regulating insurance and the second clause addressing the reach of antitrust laws to the business of insurance.")) It simply also recognized that, pursuant to the Third Circuit's analysis in *Sabo*, even when addressing a non-antitrust case involving the first clause of Section 1012(b), the court must first address the threshold question of whether the "challenged activity" constitutes the "business of insurance" itself. *Sabo*, 137 F.3d at 190-91; *see also* (D.I. 35 at 15-16).

DDOI also argues that the District Court took a wrong, "unduly narrow" approach in deciding that the challenged activity did not relate to the "business of insurance," in that the District Court improperly: (1) relied on the fact that this activity "did not fit into any of the types on the non-exhaustive list of [examples set out in *Secs. & Exch. Comm'n v. Nat. Secs., Inc.*, 393 U.S. 453 (1969) ('*National Securities*')]; and (2) concluded that the activity "was not focused on the relationship between an insurance company and policyholder." (D.I. 40 at 13; D.I. 44 at 2) DDOI seems to acknowledge that the conduct regulated by Section 6920 does not, in fact, match any of the list of examples that *National Securities* called out as amounting to the "business of insurance." But it argues that the *National Securities* Court also noted that "other activities of insurance companies" could qualify as the "business of insurance" if they "relate so closely to their status as reliable insurers"—and it claims that the challenged conduct here fits that bill, because the statute "relates to the collection of licensing information" and "also closely relates to an insurer's status as a reliable insurer." (D.I. 40 at 14 (citing *National Securities*, 393 U.S. at 460) (internal quotation marks and emphasis omitted)) But what DDOI misses here is that in *National Securities*, the Supreme Court explained that, in the end, an activity would constitute

9

the "business of insurance" only to the extent it involved "the relationship between the insurance company and the policyholder." 393 U.S. at 460. The District Court recognized this. (D.I. 35 at 16) And it rightly concluded that one simply cannot reasonably argue that the challenged conduct at play in this case (i.e., the conduct covered by Section 6920) is about the relationship between the insurance company and its policyholder. (*Id.*) Instead, the statute is all about "the relationship between the . . . insurance company and regulator(s)" because it "centers around the governmental treatment of documents provided by captive insurance companies[—]i.e., whether confidential documents may be disclosed and under what conditions." (*Id.*; *see also* D.I. 28 at 29-34)[6]

For the above-stated reasons, and for the other reasons stated by the District Court in the MO, the Court concludes that DDOI has not demonstrated a likelihood of success on the merits.

## IV.  CONCLUSION

A motion for stay pending appeal is one that seeks an extraordinary remedy. On these facts, DDOI has not met its burden to show that such a remedy is warranted, due to its failure to

---

[6] DDOI makes another argument in support of its assertion that the challenged conduct at issue amounts to the "business of insurance": that, despite the District Court's conclusion to the contrary, (D.I. 35 at 14), the activity really relates to the insurance *licensing process*. (D.I. 40 at 11-12) Here, DDOI focuses on the content of the remaining responsive documents that are in dispute between the parties (i.e., the documents that the IRS is seeking, and that DDOI refuses to turn over). It says that those documents "all relate to the application and licensing" of captive insurers or examinations. (D.I. 40 at 12) But as the District Court noted, in assessing the "challenged conduct" in a case like this, courts focus on the wording of the state statute in question and how it relates to the dispute between the parties. (D.I. 35 at 13-14 (District Court concluding that the challenged conduct was fairly characterized as "'record maintenance'" or, more specifically, as "the dissemination and maintenance of information, documents and communications maintained by the state" because this categorization "flows directly from the language of Section 6920, which is what DDOI argues protects it from complying with the Summons"); *see also* D.I. 28 at 25-26) And regardless of what is the content or subject matter of the remaining disputed documents that the IRS seeks to obtain from DDOI, Section 6920's provisions (at issue here) are all about the manner in which a regulator maintains and distributes certain information—not about the substance of insurance licensing.

sufficiently demonstrate a likelihood of success on the merits. Thus, the Court recommends that DDOI's Motion be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: August 19, 2022

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE