# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | C.A. No.: 20-CV-829-MN-CJB |
| v. | ) | |
| | ) | |
| DELAWARE DEPARTMENT OF | ) | |
| INSURANCE, | ) | |
| | ) | |
| Respondent. | ) | |

## RESPONDENT'S OBJECTIONS TO CERTAIN FINDINGS IN REPORT & RECOMMENDATION

**STATE OF DELAWARE
DELAWARE DEPARTMENT OF JUSTICE**

**OF COUNSEL:**

James J. Black, III (*pro hac*)
Jeffrey B. Miceli (*pro hac*)
Mark W. Drasnin (*pro hac*)
Black & Gerngross, P.C.
1617 John F. Kennedy Blvd.
Suite 1575
Philadelphia, PA 19103
Tel. (215) 636-1650
jblack@blackgern.com
jmiceli@blackgern.com
mdrasnin@blackgern.com

Kathleen P. Makowski, Esq. (#3648)
Deputy Attorney General
1007 Orange Street, Suite 1010
Wilmington, DE 19801
(302) 674-7326
Kathleen.Makowski@Delaware.gov

and

Patricia A. Davis, Esq. (#3857)
State Solicitor
102 W. Water Street
Dover, DE 19904
(302) 257-3233
PatriciaA.Davis@Delaware.gov

Attorneys for Respondent,
*Delaware Department of Insurance*

Dated: September 2, 2022

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Citations.................................................................................................. ii

Introduction........................................................................................................1

Objections .........................................................................................................2

    A. Objection #1–The R&R Erred by Determining that Application of the
       Three-Part Test is Precluded by Binding Third Circuit Precedent ...............................2

        1. Portion of R&R to Which Objection is Made....................................................2

        2. Basis for Objection and Legal Authority .........................................................2

    B. Objection #2–The Challenged Conduct Does Not Constitute the
       "Business of Insurance" ...........................................................................5

        1. Portion of R&R to Which Objection is Made....................................................5

        2. Basis for Objection and Legal Authority .........................................................6

            a. Section 6920 Relates to Insurance Companies' Status as Reliable
               Insurers.....................................................................................6

            b. Licensing ..................................................................................8

## <u>TABLE OF CITATIONS</u>

<u>Cases</u>                                                                                                                              <u>Page</u>

*In re Boy Scouts of Am. & Delaware BSA, LLC,*
    20-10343 (LSS), 2022 WL 3030138 (Bankr. D. Del. July 29, 2022)................................4

*Chester ex rel. N.L.R.B. v. Grane Healthcare Co.,*
    666 F.3d 87 (3d Cir. 2011).............................................................................................3

*Dehoyos v. Allstate Corp.,*
    345 F.3d 290 (5th Cir. 2003) .........................................................................................5

*Gov't Employees Ins. Co. v. Elkholy,*
    CV2116255MASDEA, 2022 WL 2373917 (D.N.J. June 30, 2022)...............................4

*Gov't Employees Ins. Co. v. Stelton Radiology Corp.,*
    CV2018532KMJBC, 2022 WL 1486116 (D.N.J. May 11, 2022) ..................................4

*Heritage Healthcare Servs. Inc. v. Beacon Mut. Ins. Co.,*
    2007 WL 1234481 (R.I. Super, Apr. 17, 2007) ..........................................................7-8

*Highmark, Inc. v. UPMC Health Plan, Inc.,*
    276 F.3d 160 (3d Cir. 2001)................................................................1, 2, 3, 4, 5

*Humana Inc. v. Forsyth,*
    525 U.S. 299 (1999)..............................................................................1, 3, 4, 5

*Luna Music, LLC v. Executive Ins. Servs., Inc.,*
    CV 2020-0002, 2022 WL 1801091 (D.V.I. June 1, 2022) ................................................4

*Mahon v. Chicago Tit. Ins. Co.,*
    2017 WL 3331738 (D. Conn. Aug. 4, 2017) ...................................................................7

*In Re Patriot National, Inc.,*
    2020 WL 5821754 (D. Del. Sept. 30, 2020)...................................................................5

*Sabo v. Metropolitan Life Ins. Co.,*
    137 F.3d 185 (3d Cir. 1998)..............................................................................1, 3, 4, 8

*Sec. & Exch. Comm'n v. Nat'l Sec., Inc.,*
    393 U.S. 453 (1969)..............................................................................1, 6-7, 8, 9

*South Jersey Sanitation Co., Inc. v. Applied Underwriters,*
    840 F.3d 138 (3d Cir. 2016)..........................................................................................4

**Cases (Cont.)**                                                                                                                    **Page**

*Suter v. Munich Reins. Co.*,
    223 F.3d 150 (3d Cir. 2000)....................................................................................3, 4, 5

*United States. v. Delaware Department of Insurance*,
    2021 WL 3012728 at *10-16 (D. Del. July 16, 2021) *report adopted*
    2021 WL 4453606 *10 (D. Del. Sept. 29, 2021) *appeal docketed*,
    No. 21-3008 (3d Cir. Nov. 1, 2021)) .................................................................4

*United States v. Tann*,
    577 F.3d 533 (3d Cir. 2009)...............................................................................3

*United States Dep't of Treasury v. Fabe*,
    508 U.S. 491 (1993)............................................................................................3


**Statutes**                                                                                                                         **Page**

18 *Del. C.* § 6920 ............................................................................................... *passim*


**Other Authorities**                                                                                                                **Page**

Robert W. Klein, Ph.D., A Regulator's Introduction to the Insurance Industry,
(2d ed. 2005),
    https://www.naic.org/documents/prod_serv._marketreg_rii_zb.pdf ..................7

National Association of Insurance Commissioners, State Insurance
Regulation, (2011),
    https://www.naic.org/documents/topics_white_paper_hist_ins_reg.pdf............7

The Delaware Department of Insurance (the "DDOI"), by and through its undersigned counsel, files these Objections to the Report and Recommendation of the Honorable Christopher J. Burke, Magistrate Judge, dated August 19, 2022 recommending that the DDOI's Motion for Stay be denied ("R&R") for the following reasons:

## INTRODUCTION

The R&R erred in its treatment of reverse-preemption under the McCarran-Ferguson Act ("MFA"). It first erred in determining that a panel of the Third Circuit could not grant the DDOI's requested relief that a three-part test was required, rather than the four-part test applied by the Court. This is not the case. The Third Circuit has not determined that the Supreme Court's recitation of a three-part test in *Humana Inc. v. Forsyth*, 525 U.S. 299 (1999) would allow a four-part test. The DDOI has a significantly more than negligible likelihood of success on the merits before a panel of the Third Circuit showing that *Humana* and the first Third Circuit case decided after the *Humana* decision mandate the use of a three-part test.

Additionally, even assuming that the four-part test[1] were to be viable in non-antitrust reverse-preemption cases, the R&R erred in determining that the DDOI did not demonstrate a likelihood of success on the merits on the issue of whether the activity governed by 18 *Del. C.* § 6920 constituted "the business of insurance." This determination ignores the Supreme Court's decision in *Sec. & Exch. Comm'n v. Nat'l Sec., Inc.*, that "[s]tatues ***aimed at*** protecting or regulating [the insurer/insured relationship] directly or ***indirectly*** are laws regulating the 'business of insurance." 93 U.S. 453, 460 (1969) (emphasis added). The failure to properly apply *National*

---

[1] The four-part test is identical to the three-part test, except it includes an additional "threshold" question, "whether the activity complained of constitutes the 'business of insurance." *See, Highmark, Inc v. UPMC Health Plan, Inc.,* 276 F.3d 160, 166 (3d Cir.2001) (citing *Sabo v. Metropolitan Life Ins. Co.*, 137 F.3d 185, 189-91 (3d Cir. 1998)).

*Security* had the effect of committing errors in two ways.  First, by determining that Section 6920 did not relate to the insurer/insured relationship and it did not regulate and protect the reliability and solvency of insurers.  Second, by determining that Section 6920 did not relate to the licensing process.

## OBJECTIONS

### A.  Objection #1–The R&R Erred by Determining that Application of the Three-Part Test is Precluded by Binding Third Circuit Precedent

#### 1.  Portion of R&R to Which Objection is Made

The DDOI objects to the R&R's conclusion at pages 5-7 that the "Court cannot conclude that DDOI has a 'reasonable chance, or probability of winning' its appeal on this issue that is 'better than negligible,'" relating to whether the Third Circuit would use a threshold "business of insurance test" as part of a four-part test for determining whether the MFA warrants reverse-preemption in a non-antitrust case.

#### 2.  Basis for Objection and Legal Authority

The R&R committed an error of law by using the four-part test which required a "threshold" determination: whether the challenged conduct constitutes the "business of insurance" in a non-antitrust case.  Instead, the most recent Supreme Court and Third Circuit precedent make clear that application of this threshold test contravenes the Supreme Court's construction of the phrase "the business of insurance."

Central to the R&R's determination was its conclusion that the Third Circuit's decision in *Highmark, Inc v. UPMC Health Plan, Inc.*, 276 F.3d 160 (3d Cir.2001), which post-dated the Supreme Court's *Humana* decision, is the binding Third-Circuit precedent relating to the question of whether a three-part or four-part test applies to a non-antitrust determination on reverse-preemption under the MFA.  (R&R at 6-7.)  As such, according to the R&R, a panel of the Third

2

Circuit would be unable to determine that the three-part test would apply and thus the DDOI could not have a reasonable probability of prevailing on appeal.  (R&R at 7).

However, the R&R's conclusion that a panel of this Court cannot determine that the threshold requirement (*i.e.* a four-part test) is not required is incorrect where, as here, there has been an intervening determination by the Supreme Court.  *Chester ex rel. N.L.R.B. v. Grane Healthcare Co.*, 666 F.3d 87, 94 (3d Cir. 2011) (*quoting United States v. Tann,* 577 F.3d 533, 541 (3d Cir. 2009)) ("a panel of our Court may decline to follow a prior decision of our Court without the necessity of an *en banc* decision when the prior decision conflicts with a Supreme Court decision").

The R&R's analysis is actually backward.  The R&R erred by ignoring the fact that the first post-*Humana* decision of the Third Circuit setting out the test actually utilized the three-part test.  *Suter v. Munich Reins. Co*., 223 F.3d 150, 160 (3d Cir. 2000).[2]  *Suter,* as did *Humana,* cited *U.S. Dept. of Treasury v. Fabe*, 508 U.S. 491 (1993) to determine that the appropriate test was the **_three-part test_**.[3]  *Suter* was decided before the determination in *Highmark* that a four-part test applied, and thus should be construed as the Third Circuit's first post-*Humana* determination of the rule to apply in first clause McCarran-Ferguson Act matters.[4]

---

[2] The DDOI pointed out *Suter's* application in its Reply on its Motion to Stay.  (D.I. 44 at 4).  The R&R neither cites nor addresses *Suter*.

[3] "Under § 1012, state laws reverse-preempt federal laws if (1) the state statute was enacted "for the purpose of regulating the business of insurance," (2) the federal statute does not "specifically relate to the business of insurance," and (3) the federal statute would "invalidate, impair, or supersede" the state statute." 223 F.3d at 160.  *Suter* did not cite *Humana* in its decision, but relied for this proposition on *Fabe*, as did the Supreme Court in *Humana*.

[4] *Highmark's* use of the four-part test relied solely on *Sabo*.  Its only reference to *Humana* was in discussing whether or not the federal law impairs the state law—a common element of both the three and four-part tests.  276 F.3d at 167-168.

3

In the case at hand, the issue is stark:  after *Humana*, in non-antitrust reverse-preemption cases under the MFA, will the Third Circuit follow *Suter* in applying a three-part test or will it follow *Highmark* and apply a four -part test?  This issue turns on the question of does *Humana's* enumeration of the three-part test (relying on *Fabe*) conflict with the *Sabo* formulation of a four-part test (and thus also the *Highmark* decision, which relied on *Sabo*).  There can be no serious dispute that the issue of whether *Humana* sets out a three-part test for MFA non-antitrust reverse-preemption is case-dispositive on the appeal.  The DDOI has a substantial likelihood of success on the merits of that issue.

No Third Circuit case after *Highmark* has applied the four-part test of *Sabo*.  Instead, the next time that the Third Circuit had the opportunity to set forth the test for MFA non-antitrust reverse-preemption, it used the three-part test and cited *Suter* for that test.  *S. Jersey Sanitation Co., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 840 F.3d 138, 142 n.7 (3d Cir. 2016).  It is also important to note that since the instant Motion to Stay was briefed, three District Courts in the Third Circuit set out the test for reverse-preemption for non-antitrust cases under the MFA, and each one uses the three-part test and cites *Suter* for that test.[5]

While not controlling on this Court, the Fifth Circuit's observation that *Humana* set out a three-part test in "extremely clear and specific language" certainly provides weight  to the DDOI's

---

[5] *Gov't Employees Ins. Co. v. Elkhol*y, CV2116255MASDEA, 2022 WL 2373917, at *11 (D.N.J. June 30, 2022) (citing *Suter*); *Luna Music, LLC v. Executive Ins. Servs., Inc.*, CV 2020-0002, 2022 WL 1801091, at *4 (D.V.I. June 1, 2022) (citing *Suter*); *Gov't Employees Ins. Co. v. Stelton Radiology Corp*., CV2018532KMJBC, 2022 WL 1486116, at *7 (D.N.J. May 11, 2022) (citing *Suter*).  There is one Bankruptcy Court decision which utilizes the four-part test.  That decision relies upon the decision in this case. *In re Boy Scouts of Am. & Delaware BSA, LLC,* 20-10343 (LSS), 2022 WL 3030138, at *50 (Bankr. D. Del. July 29, 2022) (citing *U.S. v. Delaware Department of Insurance*, 2021 WL 3012728 at *10-16 (D. Del. July 16, 2021) *report adopted* 2021 WL 4453606 *10 (D. Del. Sept. 29, 2021) *appeal docketed*, No. 21-3008 (3d Cir. Nov. 1, 2021)).

argument that there is a substantial likelihood of success on the issue that the *Humana* Court decision can be reasonably seen as imposing a three-part test. *Dehoyos v. Allstate Corp.*, 345 F.3d 290, 294–95 (5th Cir. 2003).[6]

The R&R erred in determining that a panel of the Third Circuit would be precluded from determining that the three-part test of *Humana* applies. Instead, a panel of the Third Circuit legally can (and under the caselaw discussed above, would) determine that *Highmark* conflicts not only with *Humana,* but also with the previously-decided case of *Suter*. Aside from the determination in this case, the most recent determinations of this Court,[7] other District Courts in the Third Circuit, the Third Circuit and the Supreme Court hold that *Humana* and *Suter* mandate that a three-part test applies. This provides strong support for the DDOI's substantial likelihood of success on the merits of this issue. For this reason the R&R should be rejected. This Honorable Court should grant the stay for the reasons set forth in the DDOI's Motion and Reply on the Stay (DI. 40 and 44).

**B. Objection #2–The Challenged Conduct Does Not Constitute the "Business of Insurance"**

    **1. <u>Portion of R&R to Which Objection is Made</u>**

The DDOI objects to the R&R's conclusion at pages 7-10 that the DDOI does not have the

---

[6] "In sum, in extremely clear and specific language the [*Humana*] Court identified the following three [McCarran-Ferguson Act] preemption threshold requirements: (1) the federal law in question must not be specifically directed at insurance regulation; (2) there must exist a particular state law (or declared regulatory policy) enacted for the purpose of regulating insurance; and (3) application of the federal law to the controversy in question must invalidate, impair or supersede that state law."

[7] *In re Patriot National, Inc.*, 623 B.R. 696, 709 (D. Del. 2020) (citing *Humana*)

requisite likelihood of success on its alternative argument[8] that the "challenged conduct at issue" does not constitute the "business of insurance."

## 2. __Basis for Objection and Legal Authority__

Ultimately, the R&R relies upon two bases to determine that the DDOI cannot set forth a likelihood of success that the challenged conduct at issue meets the threshold requirement of constituting the "business of insurance." Both bases rely on a misapplication of *National Securities.* First, the R&R wrongly asserts that Section 6920 does not relate so closely to an insurer's status as a reliable insurer so as to constitute the "business of insurance." Next, it wrongly asserts that Section 6920 does not relate to the licensing of insurers. Both determinations are incorrect, and are contradicted by the undisputed facts of the case and the cases which support those facts.

### a. __Section 6920 Relates to Insurance Companies' Status as Reliable Insurers__

The R&R rejected the DDOI's argument that there is a likelihood of success on the merits because Section 6920 relates to an insurance company's status as a reliable insurer. Instead the R&R determined that the only relevant issue was the relation between insurers and insureds, and Section 6920 deals with the relation between the "insurance company and regulator(s)." (R&R at 10). This was erroneous.

The R&R recognized that laws regulating activities that "relate so closely to insurance companies' status as reliable insurers" are the business of insurance. (RR at 9) (citing *National Securities,* 383 U.S. at 460). The R&R asserts that under *National Security,* an activity would

---

[8] As discussed in Objection #1, above, the DDOI submits that the threshold inquiry established by *Sabo* conflicts with a later determination of the Supreme Court. Nevertheless, even if this were not the case, the R&R misapplies the *Sabo* threshold analysis.

only constitute the "business of insurance" to the extent it involved "the relationship between the insurance company and the policyholder" and the statute here is all about "the relationship between the . . . insurance company and regulator(s)." (RR at 10).  However, the R&R ignores the very next sentence of *National Security*: "Statues ***aimed***  at protecting or regulating this relationship directly ***or indirectly*** are laws regulating the 'business of insurance.'"  383 U.S. at 460 (emphasis added).

Thus, under *National Securities,* such laws, ***aimed at*** regulating the reliability of insurers, "regulate the business of insurers."  383 U.S. at 460.  Indeed, the vast majority of laws regulating the reliability and solvency of insurance could also be characterized as "involving the relationship between the insurance company and regulators," as such laws are directed at the insurance company directly, impacting such things as the information it must provide, the types of assets it may hold, and the types of business it may write.

The DDOI, in its Motion to Stay showed that it (along with all state departments of insurance) uses the information that it receives from insurers, insureds, and other departments -- whether through the application/licensing process or through examination -- to evaluate an insurer's status as a reliable insurer.  (D.I. 40 at 14). [9]  It also cited caselaw which showed that laws like Section 6920 are "designed to assure [insurance companies] that they will not suffer harm from disclosure by entities over which they have no control, so that they will be encouraged to cooperate with [the state department of insurance] during an examination."  (D.I. 40 at 12-13) (citing *Mahon v. Chicago Tit. Ins. Co.,* 2017 WL 3331738 (D. Ct. Aug. 4. 2017)

---

[9] D.I. 40 at 14 (citing National Association of Insurance Commissioners [NAIC], State Insurance Regulation, at 4-5 (2011), https://www.naic.org/documents/topics_white_paper_hist_ins_reg.pdf; Robert W. Klein, Ph.D., Ph.D., A Regulator's Introduction to the Insurance Industry, at 133-40 (2d ed. 2005), https://www.naic.org/documents/prod_serv._marketreg_rii_zb.pdf).

(quoting *Heritage Healthcare Servs. Inc. v. Beacon Mut. Ins. Co.*, 2007 WL 1234481 (R.I. Super. Apr. 17, 2007)).

Neither the IRS in responding to the Motion for Stay, nor the R&R itself, discusses, let alone disputes these facts or law.  Simply put, based on the undisputed factual and legal record presented to this Court, Section 6920 had the aim of ensuring that captive insurers are fully forthcoming in providing information to the DDOI, which it uses to license, examine and oversee the reliability and solvency of captive insurance companies.  If an insurer is not forthcoming with the DDOI, then the DDOI's ability to effectively evaluate that insurer's status as a reliable insurer will be impaired.  Similarly, a lack of forthcomingness will impair the DDOI's evaluation of whether to license an insurer.  Based on the above, the DDOI has a reasonable likelihood of success on appeal that the aim of Section 6920 was to **_indirectly_** protect and regulate the insurer/insured relationship by promoting transparency between the insurer and its regulator and providing a framework for the free flow of information in the licensing process, in order to be able to effectively evaluate an insurer's status as a reliable insurer.

### b. <u>Licensing</u>

The R&R also committed error when it determined that the DDOI's argument that Section 6920 regulates the licensing of insurers did not have a substantial likelihood of success on the merits.  However, as this Court acknowledged, the licensing of insurers is the business of insurance.  (D.I. 35 at 16).  It also acknowledged that that the "threshold" should be applied "broadly" and it is only if the conduct is "wholly unrelated to the insurance business" that the McCarran-Ferguson Act should not be applied.  (D.I. 35 at 9) (quoting *Sabo,* 137 F.3d at 190) (*citing National Securities*, 393 U.S. at 459-60).

Given these findings, the DDOI has a substantial likelihood of success on the merits, as the DDOI has a significantly greater than negligible chance of showing that Section 6920 broadly relates to the licensing of insurers, because it is not "wholly unrelated to the insurance business." The factual record of this case includes a finding that "Section 6920 of the Delaware Insurance Code ("Section 6920") relates to the confidential treatment of materials and information that captive insurers submit to the state tax [*sic*] commissioner, either directly or through DDOI, as part of the application and licensing process."  (D.I. 35 at 2-3).

For the reasons discussed in Section B(2)(a) above, Section 6920 relates to the licensing of insurers and, at the very least, pursuant to *National Securities*, the aim of Section 6920 is to indirectly protect and regulate the insurer/insured relationship through the licensing process, to include those specific confidentiality measures designed to ensure that applicants would be forthcoming.

As such, the DDOI has a substantial likelihood of success on the merits, the Report and Recommendation should be rejected, and this Honorable Court should grant the stay for the reasons set forth in the DDOI's Motion and Reply on the Stay (DI 40 and 44).

*SIGNATURES ON FOLLOWING PAGE*

9

**STATE OF DELAWARE**
**DELAWARE DEPARTMENT OF JUSTICE**

**OF COUNSEL:**

James J. Black, III (*pro hac*)
Jeffrey B. Miceli (*pro hac*)
Mark W. Drasnin (*pro hac*)
Black & Gerngross, P.C.
1617 John F. Kennedy Blvd.
Suite 1575
Philadelphia, PA 19103
Tel. (215) 636-1650
jblack@blackgern.com
jmiceli@blackgern.com
mdrasnin@blackgern.com

*/s/ Kathleen P. Makowski*
Kathleen P. Makowski, Esq. (#3648)
Deputy Attorney General
1007 Orange Street, Suite 1010
Wilmington, DE  19801
(302) 674-7326
Kathleen.Makowski@Delaware.gov

and

Patricia A. Davis, Esq. (#3857)
State Solicitor
102 W. Water Street
Dover, DE 19904
(302) 257-3233
PatriciaA.Davis@Delaware.gov

September 2, 2022

Attorneys for the Respondent,
*Delaware Department of Insurance*

10

## CERTIFICATION PURSUANT TO STANDING ORDER
## FOR OBJECTIONS FILED UNDER FED. R. CIV. P. 72

Pursuant to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72,

Respondents hereby certify that the objections do not raise new legal/factual arguments.


                                        **STATE OF DELAWARE**
                                        **DELAWARE DEPARTMENT OF JUSTICE**

                                        */s/ Kathleen P. Makowski*
**OF COUNSEL:**                          Kathleen P. Makowski, Esq. (#3648)
                                        Attorney General
James J. Black, III (*pro hac*)          1007 Orange Street, Suite 1010
Jeffrey B. Miceli (*pro hac*)            Wilmington, DE 19801
Mark W. Drasnin (*pro hac*)              (302) 674-7326
Black & Gerngross, P.C.                  Kathleen.Makowski@Delaware.gov
1617 John F. Kennedy Blvd.
Suite 1575                                              and
Philadelphia, PA 19103
Tel. (215) 636-1650                      Patricia A. Davis, Esq. (#3857)
jblack@blackgern.com                     State Solicitor
jmiceli@blackgern.com                    102 W. Water Street
mdrasnin@blackgern.com                   Dover, DE 19904
                                        (302) 257-3233
                                        PatriciaA.Davis@Delaware.gov

                                        Attorneys for the Respondent,
September 2, 2022                        *Delaware Department of Insurance*

11

**CERTIFICATE OF SERVICE**

I HREREBY CERTIFY that on September 2, 2022, I electronically filed the foregoing document through the electronic filing system, which in turn will serve it via electronic mail on all counsel of record.


/s/ Kathleen P. Makowski
Kathleen P. Makowski

12