IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Case No. 1:20-cv-00829-MN-CJB |
| Petitioner, | ) |
| | ) Hon. Maryellen Noreika |
| v. | ) |
| | ) |
| DELAWARE DEPARTMENT OF INSURANCE, | ) |
| | ) |
| | ) |
| Respondent. | ) |

# UNITED STATES OF AMERICA'S RESPONSE TO DDOI'S OBJECTIONS TO JUDGE BURKE'S AUGUST 19, 2022 REPORT AND RECOMMENDATION

Date: September 16, 2022

DAVID A. HUBBERT
Acting Assistant Attorney General

DAVID C. WEISS
United States Attorney

KYLE L. BISHOP
WARD W. BENSON
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227, Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-1878
Fax: (202) 514-6866
Email: Kyle.L.Bishop@usdoj.gov

## TABLE OF CONTENTS

BACKGROUND ............................................................................................................................ 1
ARGUMENT ................................................................................................................................. 2
    I.    Legal background.................................................................................................... 2
    II.    Judge Burke correctly applied the Third Circuit's threshold test.................................... 3
    III.    Judge Burke correctly concluded that the challenged conduct does not constitute the business of insurance. ...................................................................................................... 5
CONCLUSION .............................................................................................................................. 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Bell Atlantic Corp. v. MFS Comms. Co., Inc.,
  90 F. Supp. 835 (D. Del. 1995) ...................................................................................................9

Gov't Emps. Ins. Co. v. Elkholy,
  No. 21-16255, 2022 WL 2373917 (D.N.J. June 30, 2022) ........................................................4

Gov't Emps. Ins. Co. v. Stelton Radiology Corp.,
  Civ. No. 20-18532, 2022 WL 1486116 (D.N.J. May 11, 2022) ................................................4

Grp. Life & Health Ins. Co. v. Royal Drug Co.,
  440 U.S. 205 (1979) ...................................................................................................................7

Highmark, Inc. v. UPMC Health Plan, Inc.,
  276 F.3d 160 (3d Cir. 2001) ...............................................................................................2, 3, 4

Humana Inc. v. Forsyth,
  525 U.S. 299 (1999) ................................................................................................................3, 4

Luna Music, LLC v. Exec. Ins. Servs., Inc.,
  No. 2020-0002, 2022 WL 1801091 (D.V.I. June 1, 2022) .........................................................4

N.L.R.B. v. Noel Canning,
  573 U.S. 513 (2014) (Scalia, J., concurring) ..............................................................................9

In re Nine Point Energy Holdings, Inc.,
  No. 21-10570 (MFW), 2021 WL 3410242 (D. Del. Aug. 4, 2021) ...........................................2

S. Jersey Sanit. Co. v. Applied Underwriters Captive Risk Assurance Co.,
  840 F.3d 138 (3d Cir. 2016) .......................................................................................................5

S.E.C. v. Nat'l Secs., Inc.,
  393 U.S. 453 (1969) .......................................................................................................2, 3, 6, 7

S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn, LLP,
  927 F.3d 763 (3d Cir. 2019) .......................................................................................................2

Sabo v. Metro. Life. Ins. Co.,
  137 F.3d 185 (3d Cir. 1998) ...........................................................................................3, 4, 8, 9

**Statutes**

15 U.S.C. § 1012, McCarran-Ferguson Act............................................................................ *passim*

18 Del. C. § 6920 ...............................................................................................................1, 7, 8

26 U.S.C. §7602.........................................................................................................................1

## BACKGROUND

The United States filed this suit to enforce an IRS summons issued to the DDOI. The summons requested information from the DDOI relevant to two promoters of captive insurance arrangements: Artex Risk Solutions, Inc. and Tribeca Strategic Advisors, LLC. (D.I. 1). Because these arrangements can facilitate tax evasion, the IRS is investigating Artex and Tribeca's conduct in promoting them. (See id. ¶¶ 4-7).

The DDOI challenged the summons by primarily arguing that under the McCarran-Ferguson Act, 15 U.S.C. § 1012, the IRS's summons authority under the Internal Revenue Code, 26 U.S.C. §7602, is preempted by the anti-disclosure provision of Delaware's insurance code. 18 Del. C. § 6920. (See, e.g., D.I. 19). Judge Burke issued a report and recommendation in favor of the United States, (D.I. 28), and soon after, this Court entered an order enforcing the summons. (D.I. 35-36). The DDOI appealed that order. (D.I. 39). The same day, it also moved for an order staying the relief pending the outcome of that appeal. (D.I. 40).

The United States opposed the motion for a stay. (D.I. 43). Judge Burke issued a report and recommendation that recommends this Court deny the motion. He concluded that because the DDOI could not show it is likely to prevail on appeal, the Court should deny the DDOI's motion seeking the "extraordinary remedy" of a stay. (Id. at 10-11).

The DDOI objects to two aspects of the report and recommendation. (D.I. 49). First, it contends Judge Burke erred by following Third Circuit precedent requiring him to consider whether Delaware's anti-disclosure statute governs an activity that constitutes the business of insurance. Following binding precedent does not constitute legal error. Second, the DDOI argues that the anti-disclosure statute governs activity that constitutes the business of insurance. But as Judge Burke and this Court held before, it does no such thing.

Given this, neither issue provides the DDOI with a likelihood of success on appeal. And because the DDOI's appeal is unlikely to succeed, a stay of the Court's order is unwarranted.

## ARGUMENT

**I.    Legal background.**

To obtain a stay of a district court ruling, "courts consider '(1) whether the appellant has made a strong showing of the likelihood of success on the merits; (2) will the appellant suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest.'" In re Nine Point Energy Holdings, Inc., No. 21-10570 (MFW), 2021 WL 3410242, at *2 (D. Del. Aug. 4, 2021) (citing In re Revel AC, Inc., 802 F.3d 558, 565 (3d Cir. 2015)). If the movant fails to satisfy its burden on either of the first two factors, the stay should be denied without further analysis. S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn, LLP, 927 F.3d 763, 775 (3d Cir. 2019) (quoting Revel, 802 F.3d at 571).

Here, the DDOI premises its motion for stay exclusively on the application of the McCarran-Ferguson Act. That law creates an exception to the general rule that federal law trumps conflicting state law. Congress enacted the McCarran-Ferguson Act to restore "the relationship between insurance ratemaking and the antitrust laws, and with the power of the States to tax insurance companies." S.E.C. v. Nat'l Secs., Inc., 393 U.S. 453, 458-59 (1969) (citing 91 Cong. Rec. 1087-1088). The Act sought to ensure "activities of insurance companies in dealing with their policyholders would remain subject to state regulation." Id. at 459.

Under the McCarran-Ferguson Act, state law preempts federal law when (1) the federal law at issue does not specifically relate to the business of insurance; (2) the state law regulating the activity was enacted for the purpose of regulating the business of insurance; and (3) applying federal law would invalidate, impair, or supersede the state law. Highmark, Inc. v. UPMC Health

Plan, Inc., 276 F.3d 160, 166 (3d Cir. 2001).  But before applying this three-part test, a court in the Third Circuit must first ask if the activity constitutes the business of insurance. Id.  If it does not, that concludes the analysis, and federal law prevails. Id.  An activity typically constitutes the business of insurance when it relates to "the relationship between the insurance company and the policyholder." Nat'l Secs., 393 U.S. at 460.

**II.     Judge Burke correctly applied the Third Circuit's threshold test.**

In the report and recommendation, Judge Burke again rejected the DDOI's argument that the McCarran-Ferguson Act does not require the Court to determine whether the activity complained of constitutes the business of insurance. (D.I. 48 at 5).  That is because, as Judge Burke explained once more, Third Circuit precedent forecloses this argument.

As Judge Burke described in his earlier report and recommendation, the Third Circuit adopted this threshold test in 1998. (D.I. 28 at 20-22 (discussing Sabo v. Metro. Life. Ins. Co., 137 F.3d 185 (3d Cir. 1998))).  A year later, the Supreme Court considered a case in which the issue presented addressed just one aspect of the three-factor test – the meaning of "invalidate, impair, or supersede." (D.I. 28 at 22 (discussing Humana Inc. v. Forsyth, 525 U.S. 299 (1999))).  Two years later, the Third Circuit once again faced a McCarran-Ferguson Act question.  In that decision, it reiterated that, as a threshold matter, the Act only applied when the activity at issue constitutes the business of insurance. Highmark, 276 F.3d at 166.  Thus, over time, the Third Circuit has "clearly and repeatedly instructed that the Court must first assess whether the movant has satisfied the threshold element . . . ." (D.I. 28 at 23).

This Court agreed with Judge Burke's analysis, noting that "because no Supreme Court precedent has 'clearly and unambiguously' spoken on the threshold issue, the Court should follow Third Circuit precedent and apply the threshold requirement . . . ." (D.I. 35 at 11 (quoting

3

D.I. 28 at 23-25)). Judge Burke once again reiterated this point in the report and recommendation currently before this Court. (D.I. 48 at 5-6).

In its objection, the DDOI argues that Judge Burke erred by not concluding that Suter v. Munich Reins. Co. constitutes the binding views of the Third Circuit on this question. (D.I. 49 at 3-4 (discussing Suter, 223 F.3d 150 (3d Cir. 2000))). But Suter is inapposite because, much like in Humana, the court there did not consider whether the threshold test applied. Rather, it focused on the only argument raised by the parties in that case – whether the relevant acts "specifically relate[d] to the business of insurance." Suter, 223 F.3d at 160. It is unsurprising that the parties did not contest whether the activity at issue there – an arbitration clause in a reinsurance contract between the insurer and insured – constituted the business of insurance. At any rate, because the parties did not bring it before the Court, it cannot be said that the Third Circuit overruled Sabo by omitting the threshold test from its analysis in Suter.[1] And of course, because the Court of Appeals' continued to apply the threshold test from Sabo in its decision in Highmark, this Court cannot reasonably conclude that the Third Circuit believes Suter rejected the threshold test from Sabo. As the DDOI concedes, a United States Bankruptcy Court in this district reached the same conclusion mere weeks ago. (D.I. 49 at 4 n. 5 (citing In re Boy Scouts of Am. and Del. BSA, LLC, --- B.R. ----, 2022 WL 3030138, at *50 (Bankr. D. Del. July 29, 2022))).

---

[1] The DDOI also tries to persuade the Court that courts in the Third Circuit do not apply the threshold test by pointing to three district court cases decided in 2022. As in Suter, the parties in those cases did not dispute that the activity at issue constituted the business of insurance. See Gov't Emps. Ins. Co. v. Elkholy, No. 21-16255, 2022 WL 2373917 (D.N.J. June 30, 2022) (considering enforceability of arbitration clause in insurance agreement between insurer and healthcare providers); Gov't Emps. Ins. Co. v. Stelton Radiology Corp., Civ. No. 20-18532, 2022 WL 1486116, at *7 (D.N.J. May 11, 2022) (same); Luna Music, LLC v. Exec. Ins. Servs., Inc., No. 2020-0002, 2022 WL 1801091, at *4 (D.V.I. June 1, 2022) (concerning arbitration clause in insurance contract). The DDOI points to no court in this circuit that has considered and rejected the threshold test, and the United States is unaware of any such decision.

4

The DDOI also repeats its earlier argument that S. Jersey Sanit. confirms its view that the threshold test does not apply in the Third Circuit. (D.I. 49 at 4 (discussing S. Jersey Sanit. Co. v. Applied Underwriters Captive Risk Assurance Co., 840 F.3d 138 (3d Cir. 2016))). But as Judge Burke explained in the report and recommendation, this argument suffers two flaws: (1) the S. Jersey Sanit. decision did not discuss the McCarran-Ferguson Act "in any detail," and (2) the rules of the Court of Appeals forbade the S. Jersey Sanit. panel from overturning prior precedent of the Third Circuit. (D.I. 48 at 6 (further citation omitted)).

The DDOI also errs when it states that "[t]here can be no serious dispute that" this issue is dispositive. (D.I. 49 at 4). As Judge Burke noted in his first report and recommendation, because this Court ruled for the United States as to the threshold issue, it did not consider the federal government's arguments about the remaining factors at play under the McCarran-Ferguson Act. (D.I. 34 at n. 22). So even if this Court were to reverse its earlier position, it should still conclude the DDOI is unlikely to succeed on appeal because the rest of the McCarran-Ferguson Act analysis favors the federal government. (See D.I. 23 at 16-20).

**III.     Judge Burke correctly concluded that the challenged conduct does not constitute the business of insurance.**

The DDOI also questions Judge Burke's conclusion that the conduct addressed in the state's anti-disclosure statute does not constitute the business of insurance. (D.I. 49 at 6-9). The DDOI posits two arguments. First, it contends that the state statute governing the maintenance of records by a state agency relates "so closely to insurance companies status as reliable insurers" that the activities it governs constitute the business of insurance. (Id. at 6 (internal citations and quotations omitted)). Second, it argues that because the anti-disclosure statute "broadly relates to the licensing of insurers," it passes the threshold test. As Judge Burke and this Court have explained to the DDOI, both arguments are wrong.

5

To begin, the DDOI wrongly suggests that Judge Burke erred because he did not apply the Supreme Court's observation in Nat'l Secs. that statutes "aimed at protecting or regulating" the relationship between an insurance company and policyholder are considered laws that regulate the business of insurance. (D.I. 49 at 7 (discussing Nat'l Secs., 393 U.S. at 460)). But Judge Burke did focus on the relationship that the anti-disclosure statute is aimed at, *i.e.*, the relationship between an insurance company and its regulator. (D.I. 48 at 10). Because the statute concerns that relationship – and not the relationship between an insurance company and its policyholders – he correctly concluded that the state law did not meet the threshold test.

The DDOI next argues that the state statute meets the threshold test because the anti-disclosure statute centers on the reliability of insurance companies as insurers. (D.I. 49 at 6). But this misreads Nat'l Secs. In the sentence referenced by the DDOI, the Court's discussion did not focus on the reliability of insurance companies as such, but on the reliability of insurance policies issued by those companies.[2] Nat'l Secs., 393 U.S. at 460 ("The relationship between insurer and insured, the type of policy which could be issued, *its* reliability, interpretation, and enforcement – these were the core of the 'business of insurance'") (internal quotations in original) (emphasis added). The adjective "its" in this sentence references the "reliability, interpretation, and enforcement" of insurance policies, not insurance companies. Id. Indeed, it would be nonsensical to read the sentence as discussing the "interpretation and enforcement" of

---

[2] The DDOI's brief is clear that it refers to this sentence because it takes issue with the report and recommendation's omission of that specific sentence of the opinion. (D.I. 49 at 7). While later in the paragraph Nat'l Secs. references the reliability of insurance companies, it only defines the business of insurance to include activities that "relate *so closely* to" insurance companies "status as reliable insurers" that they "*must* be" considered the business of insurance. Nat'l Secs., 393 U.S. at 460 (emphasis added). This is a far more rigorous standard than the one the DDOI sets forth in its brief. (D.I. 49 at 7 (business of insurance defined to include statutes aimed at regulating the reliability of insurers, not statutes so closely related to status as reliable insurers that they must be considered the business of insurance)).

6

an insurance company. Id. (cleaned up). So when Nat'l Secs. is correctly read as saying that statutes "aimed at" the "reliability, interpretation, and enforcement" of insurance policies constitute the business of insurance, it does the DDOI no favors, as the anti-disclosure statute does no such thing.[3] Id.

Section 6920 is not aimed at protecting the insurer-policyholder relationship, see Nat'l Secs., 393 U.S. at 460, nor is it aimed at protecting the performance of an insurance contract, Fabe, 508 U.S. at 505. Instead, it seeks to protect either the insurer-regulator relationship or the regulator-foreign regulator relationship. To the extent the DDOI suggests that insurers would be less forthright in disclosures to the DDOI were this Court to allow the IRS to investigate tax-shelter promoters that use Delaware insurance companies to pursue illegal aims, that argument assumes that prospective and existing insurers would not comply with their legal obligations to disclose required information to DDOI absent section 6920. (D.I. 49 at 7-8).

This Court should not lightly assume that insurers would shirk their legal obligations in this way. Moreover, even if there were merit to the assumption that any impairment of section 6920 would lead insurers to violate other aspects of Delaware law and thus damage their reliability (which there is not), any such effects are too indirect to bring section 6920 within the scope of laws enacted for the purpose of regulating the business of insurance. See Fabe, 508 U.S. 508–09; Grp. Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205, 216-17 (1979). And this argument is particularly ill-suited to the captive and micro-captive insurance context, where

---

[3] The DDOI is also incorrect when it states that Judge Burke "recognized" in the report and recommendation that laws that relate so closely to an insurance company's status as a reliable insurer are the business of insurance. (D.I. 49 at 6-7). In the section of the report and recommendation referenced by the objection, Judge Burke was simply summarizing the DDOI's argument, not adopting it. (D.I. 48 at 9). And contrary to the DDOI's assertion, Judge Burke did not say that such statutes "are the business of insurance"; he simply observed that, per his understanding of the DDOI's argument, they "could qualify" as such. (Id.).

policyholders control the insurer, and are thus better positioned to assess the reliability of an insurer than a state licensing agency as compared to policyholders interacting with unrelated insurers.

The DDOI also argues that, because section 6920 impacts the licensing of insurers, it meets the threshold-test requirement by dint of section 6920 not being "wholly unrelated" to the business of insurance. (D.I. 49 at 8-9). This is wrong for several reasons.

Section 6920 does not relate to any substantive aspects of licensing or examining insurance companies. It does not define the requirements that a captive insurer must satisfy to become licensed, nor does it require DDOI as the regulator to make findings that licensing requirements are satisfied. It does not define the documents that a prospective captive insurer must submit to DDOI as part of its licensing application. Nor does it delineate when or how DDOI will examine captive insurers, what standards captive insurers will need to satisfy to pass an examination, or what findings DDOI must make as part of the examination process. As Judge Burke summarized, – the "Delaware Captive Law deals with such licensing issues" not in section 6920, but "in other portions of its statutory scheme. (D.I. 28 at 31 n. 20). Because the anti-disclosure statute "centers around the government treatment of documents provided by captive insurance companies," rather than the relationship between the insurance company and its policyholders, the activity it governs does not constitute the business of insurance. (D.I. 35 at 16 (citing D.I. 28 at 28-30)).

Additionally, the DDOI is simply wrong when it alleges that every activity that it is not "wholly unrelated" to the business of insurance necessarily meets the threshold test. (D.I. 49 at 8 (quoting Sabo, 137 F.3d at 190 (further citation omitted))). It is true that Sabo observed that the McCarran-Ferguson Act should not apply when activities are "wholly unrelated" to the business

of insurance. Sabo, 137 F.3d at 190 ("If the contested activities are wholly unrelated to the insurance business, then the McCarran-Ferguson Act has no place in analyzing federal regulation because only when insurance companies are engaged in the business of insurance does the act apply.") (quoting Nat'l Secs., 393 U.S. at 459-60) (cleaned up). But it does not follow that every activity that is not wholly unrelated to the business of insurance automatically meets the threshold test.[4] The distinction here is not outcome determinative because recordkeeping is wholly unrelated to the business of insurance. But even if it were not, that would not mean the activity automatically met the requirements of the threshold test.

## CONCLUSION

Given the above, the United States asks that this Court adopt Judge Burke's report and recommendation and deny the DDOI's motion to stay this Court's order pending appeal.

Date: September 16, 2022

Respectfully submitted,

/s/ Kyle L. Bishop
KYLE L. BISHOP
WARD W. BENSON
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227, Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-1878
Fax: (202) 514-6866
Email: Kyle.L.Bishop@usdoj.gov

---

[4] This logical fallacy is known as the fallacy of the inverse, or denying the antecedent. N.L.R.B. v. Noel Canning, 573 U.S. 513, 589 (2014) (Scalia, J., concurring) (describing the fallacy as "the incorrect assumption that if P implies Q, then not-P implies not-Q."); see also Bell Atlantic Corp. v. MFS Comms. Co., Inc., 90 F. Supp. 835, 848-49 (D. Del. 1995) (same).

9

## CERTIFICATE OF SERVICE

      I hereby certify that on this 16th day of September, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to those registered to receive it.

                                                                 */s/ Kyle L. Bishop*  
                                                                 KYLE L. BISHOP  
                                                                 Trial Attorney  
                                                                 United States Department of Justice, Tax Division